## AMERICAN ALLIANCE INS. CO. et al. v. BOARD OF INS. COM'RS et al.

### No. 8830.

Court of Civil Appeals of Texas. Austin.

March 22, 1939.

Rehearing Denied April 5, 1939.

Thompson, Knight, Baker, Harris & Wright, of Dallas, for appellants American Alliance Ins. Co., Millers Mutual Fire Ins. Co. of Texas, Gulf Ins. Co. and Trinity Universal Ins. Co.

Smithdeal, Shook & Lefkowitz, of Dallas, for appellant Republic Ins. Co.

E. W. Hander, of Waco, and George E. Kacir, of West, for appellant Germania Mut. Aid Ins. Ass'n.

C. H. Chernosky, of Houston, for appellant Alavonic Mut. Fire Ins. Ass'n.

R. L. Moulden, of McKinney, for appellant Collin County Farmers Mut. Ins. Co.

E. C. Gaines, of Austin, for appellants Lumber Mens Underwriting Alliance et al.

Wm. McCraw, Atty. Gen., and Earl Street and Richard Brooks, Asst. Attys. Gen. (Vernon Coe, Former Asst. Atty. Gen., of counsel), for appellees.

McCLENDON, Chief Justice.

This suit involves the constitutionality of Section 2 of the "Firemen's Relief and Retirement Fund Law," H.B. 258, Chap. 125, p. 229, Gen.Laws, Reg.Sess. 45th Leg. Vernon's Ann.Civ.St. art. 6243e, § 2, which levies a two per cent tax on fire insurance premiums.

The suit was by the American Alliance Insurance Company against the Board of Insurance Commissioners (referred to as the Board), its members, and the State Treasurer, to enjoin collection of the tax. Various other fire insurance organizations doing business under various plans, including stock, mutual assessment (statewide and countywide) reciprocal, Lloyds, etc., intervened as parties plaintiff.

Except as to one company whose business was that of reinsurance conducted entirely outside the state, the court denied the injunction, holding the law in every respect valid. Plaintiff and interveners (except the one noted) have appealed.

The law is attacked on the ground that it violates quite a number of constitutional provisions. Since, however, we are holding that it violates the due process and equal protection provisions of the State and Federal Constitutions, we shall limit our discussion to that issue.

The provision of Section 2 which embodies this infirmity reads: "provided, the said two (2) per cent shall not be passed on to the purchaser of insurance and the Insurance Department shall not allow such two (2) per cent as additional charge in making rates of fire insurance in the State of Texas."

The entire Section reads: "Sec. 2. For the purpose of providing permanent funds and revenue for the Firemen's Relief and Retirement Fund hereby created, there is hereby levied and assessed against each and every insurance company, whether a firm, partnership, corporation, mutual or reciprocal company, transacting in this State the business of fire insurance, an additional occupation or license tax of two (2) per centum of all gross premium receipts received or collected from persons or property within this State during the preceding year ending December 31st, provided, the said two (2) per cent shall not be passed on to the purchaser of insurance and the Insurance Department shall not allow such two (2) per cent as additional charge in making rates of fire insurance in

the State of Texas. The gross premium receipts herein referred to shall be reported by said insurance companies to the Commissioner of Insurance subject to the same credits and deductions for capital investment, re-insurance and return premium paid policyholders; the amount of the tax thereon shall be paid in addition to, at the same time and in the same manner as is now provided by Article 7064 of the Revised Civil Statutes of Texas, 1925, and Acts amendatory thereof, and which said tax when so paid and received by the State Treasurer, less the proportion thereof for public school purposes, shall be set aside, deposited into and transferred to and for the use, benefit, and purposes of said Firemen's Relief and Retirement Fund and/or disbursed therefrom as herein provided and directed."

It would serve no useful purpose to cite supporting authority or enlarge upon the now elementary propositions that the fire insurance business is affected with a public interest; that premium rates are a proper subject of state regulation; that such rates, to be valid must be reasonable and nonconfiscatory; and that in determining whether they are confiscatory, taxes constitute a legitimate expense which must be taken into account. That is, the rate prescribed (whether maximum or fixed) must be sufficient to yield a reasonable net capital return, after deducting all necessary and proper expenses, in which latter taxes must be included. Otherwise the rate is confiscatory and violative of the stated constitutional inhibitions. These principles are conceded, as is also the validity of our statutes which invest the Board with power to prescribe maximum premium rates.

If, therefore, the effect of the proviso be to authorize the Board to fix rates which would be confiscatory if taxes are allowed as an expense, yet non-confiscatory if taxes are not so allowed, the proviso is manifestly violative of the invoked constitutional inhibitions.

Appellees' contention that the proviso does not have this effect is predicated, as we gather from the briefs, upon two grounds; the first of which is embodied in the following quotation from their brief, entitled "Appellees' Additional Remarks": "It is the contention of appellees in this cause that the words 'and the Insurance Department shall not allow such 2% as additional charge in making rates of fire in-

surance in the State of Texas' * * * should not be construed as forbidding the Insurance Department to take such 2% tax into consideration · under any circumstances. The proper construction of said words is that they prohibit the Insurance Department from determining upon a rate otherwise deemed to be reasonable and then proceeding to add thereto the amount of said 2% tax. It is the further contention of appellees, in which appellants concurred in oral argument, that the provision of said Section 2 prohibiting the passing on of the tax does not apply to the Insurance Department, but serves to forbid insurance companies whose rates are not regulated by the Insurance Department to add such 2% to their rates. In this connection appellees rely upon the elementary principle that a statute susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, will be so construed as to save its validity."

There is no difference, in so far as concerns passing the tax on to the purchaser, whether the particular method of so doing is by adding the tax to the expense account or adding it to the rate. The two expressions in the proviso, "shall not be passed on to the purchaser of insurance," and "shall not allow * * * as additional charge in making rates," necessarily mean the same thing, namely, that the tax must not be taken into account in fixing the rate the purchaser is to pay and the net return the carrier is to receive, but is to be absorbed altogether and exclusively by the carrier. And this, regardless of whether the carrier is thereby required to do business at a loss, or at a return so low as not to yield a reasonable net profit. Tested by the clear and unequivocal import of the words employed they can be given no other meaning.

The legislative intent is plain. We are not concerned with what may have motivated inclusion of this proviso in the law. It is interesting to note, however, as a matter of history of the legislation, that a bill of similar import, without the proviso, passed by the forty-fourth legislature, was vetoed, the Governor's proclamation reading in part: "I am informed by the Insurance Department that this additional tax upon all premiums will inevitably result in raising premium rates proportionately. This would but impose an additional burden ·upon real estate, which is al-ready staggering under an unjust and almost unbearable burden."

The other ground under which appellees contend that the act does not offend the invoked constitutional inhibitions may be gathered from the following quotation from their brief:

"The Board of Insurance Commissioners is directed by Articles 4878 and 4879, Texas Revised Civil Statutes, 1925, to prescribe, fix, determine and promulgate the rates of premiums to be charged and collected by fire insurance companies transacting business in this State, said rates to be the maximum rates to be charged by such companies. Neither said articles nor any other portion of the insurance laws of this State directs that the rates so fixed shall be the lowest possible rate consistent with the due process provision of the 14th Amendment to the Constitution of ·the United States, [U.S.C.A.] though, of course it is an implied condition of the validity of such statutes that the rates to be prescribed thereunder shall not be lower than such an amount. It does not follow that they may not be any greater amount. The only criterion set up by Article 4878 for the rate level to be used under said Article is the direction therein as to the data to be used in making such rates which is as follows:

" 'Said Commission shall ascertain as soon as practicable the annual fire losses in this State; obtain, make and maintain a record thereof and collect such data with respect thereto as to enable said commission to classify the fire losses of this State, the causes thereof and the amount of premiums collected therefor for each class of risks and the amount paid thereon in such manner as will aid in determining equitable insurance rates, methods of reducing such fire losses and reducing the insurance rates of this State or subdivisions of this State.'

"Three elements of the ordinary system of utility rate making are conspicuous by their absence from this statute, namely, valuation, operating expenses, and operating revenue. The direction to the Board of Insurance Commissioners is in line with what the evidence shows to have been the practice of the Board, namely, to make rates based upon the necessary net premium for the payment of losses, adding thereto a loading based upon the premiums collected prior to the existence of the rating law."

■ We do not concur in the view that the Board is limited in its investigation and in the elements it may consider in making rates to those expressly enumerated in the quoted statute. It is implicit in the quoted statute as well as in other provisions of the law (Chapter 10 of Title 78) that the Board is given the power and charged with the duty of promulgating rates which shall be "equitable", that is reasonable, alike to the insurer and the insured. The objective is expressed of "reducing the insurance rates of this state or subdivisions of this state." Other provisions of the title require notice and hearing upon the subject, and the right is given to interested citizens, policy holders, "or any Board of Trade, Chamber of Commerce, or other civic organization, or the civil authorities of any town, city, or village," article 4892, as well as to insurance carriers, to appear and adduce evidence at such hearings, and to petition the Board for redress of any grievance resulting from its orders. The right of review by the courts is given with power in the courts to set aside the order if found by the court "to be unreasonable, unjust, *excessive* or inadequate." Article 4893. (Emphasis supplied.) Clearly a duty both to the insuring public and the insurance carriers is imposed by the statute. And this duty necessarily implies that the Board shall take into consideration every factor essential to the promulgation of rates which shall be as low to the insured as is consistent with a reasonable return to the insurer.

■ Nor can it be properly said that the basic principles of rate making in fire insurance are any different in substance from those in "the ordinary system of utility rate making." Some elements affecting the subject that are lacking in the former may be present in the latter; and vice versa. Yet both have a common objective, that is reasonableness from the viewpoint of all parties affected. No system of rate making could possibly attain this objective without taking into account every legitimate item of expense of operation or of conducting the business.

The Board, it is true, is charged with other duties than those ordinarily imposed upon rate making agencies; namely, the adoption of expedients which tend to reduce the fire hazard. Such expedients, when effective, are ultimately reflected in the rate structure, and are therefore beneficial to the purchaser of insurance, as well as to the public at large. But this added function of the Board has no material bearing upon the principles it is required to apply and the elements it is required to consider in arriving at reasonable rates.

■ Much stress is laid upon the fact that the underwriting profit for the fire year period 1933–1937 of all insurance companies reporting to the Board averaged 17.02% per annum. The court's conclusion that the proviso did not render the law obnoxious to the invoked constitutional inhibitions appears to be predicated upon this fact; as appears from its pertinent conclusions of law which read:

"1. It is concluded as a matter of law that a tax of two percent of the gross premium income derived from the direct writing of insurance against loss by fire would not have been confiscatory if applied to the income of the companies engaged in writing such insurance in view of the amount of such income compared with the losses and expenses incurred by such companies during the five years next preceding the date of the trial of this cause. And this conclusion is reached notwithstanding that the amount of such tax is required by House Bill No. 258 to be absorbed by the insurance carriers.

"2. It is concluded, as a matter of law, that a tax of two per cent upon the gross premium income of insurance carriers from the writing of insurance against loss by fire and required to be absorbed by such carriers would not be confiscatory so long as such carriers earn a net underwriting profit before deduction of such tax in an amount equal to or in excess of 5% of the gross premium income of such carriers."

If we had under consideration the question of the reasonableness of rates which were promulgated by the Board for those years, the first conclusion would be pertinent both from the viewpoint of inadequacy or excessiveness. The second conclusion merely holds that further rates will not be confiscatory so long as they yield a net underwriting profit of 5% excluding, however, taking into consideration the tax of 2%. In other words a 3% net underwriting profit would not be confiscatory. We are dealing not with rates already promulgated, but with the affect of the proviso upon the future rate making powers of the Board. The proviso withdraws from the Board the power to take into consideration the tax in any rates it may

promulgate subsequently to the effective date of the law. And if the proviso were valid, the same inhibition would be laid upon the courts in reviewing the rates from the viewpoint either of their inadequacy or excessiveness. The "inevitable result" of the tax without the proviso, under proper exercise of the functions and performance of the duties of the Board, would therefore be that expressed in the Governor's proclamation of "raising premium rates proportionately," thereby imposing "an additional burden upon real estate." It follows that the proviso impinges upon the powers and duties of the Board in promulgating rates which are reasonable alike to the insurer and the insured.

The trial court's judgment is reversed and judgment is here rendered for appellants.

Reversed and rendered.