MID–CENTURY INSURANCE COM-
PANY OF TEXAS and Texas Farm-
ers Insurance Company, Petitioners,

v.

Shefqet ADEMAJ, Respondent.

No. 05–0016.

Supreme Court of Texas.

Argued Oct. 17, 2006.

Decided Nov. 30, 2007.

Rehearing Denied Feb. 22, 2008.

Thomas T. Rogers and Mr. William J. Cobb, III, Jackson Walker, L.L.P., Austin, TX, for Petitioner.

Gavin H. McInnis, Michael G. Maloney, Maloney & Maloney, PC, San Antonio, and D.J. Powers, Law Offices of D.J. Powers, Austin, TX, for Respondent.

Justice GREEN delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice WAINWRIGHT, Justice BRISTER, Justice JOHNSON, and Justice WILLETT joined.

This case concerns the convergence of three provisions enacted by the Texas Legislature during the 1991 legislative session: (1) article 4413(37), section 2 of the Revised Civil Statutes, creating the Texas Automobile Theft Prevention Authority (the Authority) as a division of the Texas Department of Transportation; (2) article 21.35B(a) of the Insurance Code, detailing the types of payments insurers generally may solicit or collect;[1] and (3) article 5.101 of the Insurance Code, outlining a flexible rating program and rate-filing process to be used by all automobile insurers in Texas.[2]

---

1. Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 11.17, 1991 Tex. Gen. Laws 1063, *amended by* Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 12.49, 1993 Tex. Gen. Laws 2666, *amended by* Act of May 18, 1995, 74th Leg., R.S., ch. 380, § 2, 1995 Tex. Gen. Laws 2928 [hereinafter Article 21.35B]. Though Article 21.35B has been recodified, the parties refer to the law as it stood when the suit was filed, and for the purposes of this opinion we

do the same. Act of May 20, 2003, 78th Leg., R.S., ch. 1274, § 26, 2003 Tex. Gen. Laws 4138 (current version at Tex. Ins.Code § 550.001).

2. Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 2.01, 1991 Tex. Gen. Laws 952, *amended by* Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 6.04, 1993 Tex. Gen. Laws 2603, *amended by* Act of May 25, 1995, 74th

Shefqet Ademaj and others (Ademaj, collectively) brought a class action suit against Mid–Century Insurance Company of Texas and Texas Farmers Insurance Company (Mid–Century, collectively), and sought a declaratory judgment on the manner in which Mid–Century could lawfully recoup the legislatively imposed Authority fee from insureds. The trial court ruled in Ademaj's favor, and the court of appeals affirmed. We reverse the court of appeals' judgment and render a take-nothing judgment in favor of Mid–Century.

## I

Article 4413(37) funds the Authority's automobile theft prevention programs by requiring each automobile insurer to pay a fee of $1 per policy year for every automobile insured. TEX.REV.CIV. STAT. art. 4413(37), § 10(b). The commissioner of the Texas Department of Insurance authorized automobile carriers to recoup the fee from insureds so long as the carriers provided insureds notice that, as part of the policy, they were being charged the fee "in addition to the premium due under this policy." 28 TEX. ADMIN. CODE § 5.205(b)(1), (b)(2) (1992). Article 21.35B applies to all insurers and outlines payments insurers may solicit or collect from policyholders. The statute provides, in pertinent part:

(a) No payment may be solicited or collected by an insurer, its agent, or sponsoring organization in connection with

an application for insurance or the issuance of a policy other than:

(1) premiums;

(2) taxes;

(3) finance charges;

(4) policy fees;

(5) agent fees;

(6) service fees, including charges for costs described under Article 21.35A of this code;

(7) inspection fees; or

(8) membership dues in a sponsoring organization.

Art. 21.35B(a). Article 5.101 of the Texas Insurance Code, entitled "Flexible Rating Program for Certain Insurance Lines," applies to automobile insurers and authorizes the commissioner to set a benchmark rate for each line of personal automobile insurance sold in Texas. Article 5.101, §§ 1(a), 3(b). Under Article 5.101, once the commissioner establishes "flexibility band[s]"—acceptable rate ranges for each line of insurance—insurers must file detailed information on proposed rates which, if within the flexibility bands, are presumed valid. *Id.* § 3(e)-(f).

Ademaj alleged in a motion for summary judgment that Mid–Century illegally collected the Authority fee because the fee was not included in Mid–Century's Article 5.101 rate-filing. Mid–Century countered with their own motion for summary judgment, alleging that Article 21.35B(a) authorized them to charge the Authority fee

Leg., R.S., ch. 984, § 1, 1995 Tex. Gen. Laws 4936, *amended by* Act of May 25, 1997, 75th Leg., R.S., ch. 942, §§ 1–2, 1997 Tex. Gen. Laws 2950, *amended by* Act of May 27, 1997, 75th Leg., R.S., ch. 1330, § 18, 1997 Tex. Gen. Laws 5030, *amended by* Act of May 22, 2001, 77th Leg., R.S., ch. 1071, § 1, 2001 Tex. Gen. Laws 2359 [hereinafter Article 5.101]. The lawsuit, filed in 2002, is governed by the statute as it read after the 2001 amendments, and though we note that our reasoning

applies to all versions of the statute, we cite the 2001 text for the remainder of this opinion. We further note that effective December 1, 2004, the Legislature replaced Article 5.101 with Article 5.13–2. Act of June 2, 2003, 78th Leg., R.S., ch. 206, § 6, 2003 Tex. Gen. Laws 925. In 2005, the Legislature repealed Article 5.13–2, effective April 1, 2007. Act of May 24, 2005, 79th Leg. R.S., ch. 727, § 18(d), 2005 Tex. Gen. Laws 2187.

as an expense, and that they were therefore not required to include the fee in their Article 5.101 rate-filing. Mid–Century and Ademaj ultimately filed a joint motion to sever Ademaj's claims from the remaining plaintiffs' claims or, alternatively, for a written order for interlocutory appeal of the summary declaratory judgment. The parties stipulated the following:

1. Ademaj paid a total of $1 in Authority fees to Mid–Century Insurance Company.

2. Ademaj paid a total of $3 in Authority fees to Texas Farmers Insurance Company.

3. All payments Ademaj made for private passenger automobile insurance coverage, other than the Authority fees, were legally authorized.

4. Neither Mid–Century nor Texas Farmers charged Ademaj the Authority fee as part of the premium for private passenger automobile insurance coverage.

5. Neither Mid–Century nor Texas Farmers has included the Authority fee in their rates or in their rate-filings made with the commissioner under Article 5.101.

The trial court issued a partial summary judgment in favor of Ademaj. The court of appeals affirmed the trial court's ruling, holding insurers are required to include the Authority fee in their Article 5.101 rate-filings with the commissioner. *Mid–Century Ins. Co. v. Shefqet*, 202 S.W.3d 176, 184–85 (Tex.App.-Tyler 2004). Mid–Century timely filed this appeal.

## II

■ We review a trial court's grant of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). When, as here, both parties moved for summary judgment and the trial court granted one and denied the other, we "determine all questions presented and render the judgment the trial court should have rendered." *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex.2002). Our objective in construing a statute is to give effect to the Legislature's intent. Tex. Gov't Code § 312.005; *Am. Home Prods. Corp. v. Clark*, 38 S.W.3d 92, 95 (Tex.2000). Our interpretation of these statutes begins with their plain meaning, *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999), which we derive "from the entire act and not just from isolated portions." *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002). Thus, we "read the statute as a whole and interpret it to give effect to every part." *Id.* (quoting *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex.1998)).

■ The parties agree that the Insurance Code authorizes insurers to recoup the Authority fee amount from insureds, and disagree only over which specific articles and conditions govern the payments. The principal issue is whether, as Ademaj argues, insurance carriers must include the Authority fee within the rates filed under Article 5.101, or whether, as Mid–Century argues, carriers may recoup the fee independently under Article 21.35B. We must determine whether the rate arising from the Article 5.101 rate-filing process is: (1) merely the premium to which an insurer may add the charges enumerated in Article 21.35B; or (2) the sum of all permissible charges, including any Article 21.35B charges the insurer requires the policyholder to pay. The court of appeals construed Article 5.101 to require the latter. 202 S.W.3d at 184. We disagree.

■ First, we construe Article 21.35B as an affirmative source of an insurer's authority to solicit and collect payments. Article 21.35B(a) provides that "[n]o payment may be solicited or collected ...

*other than"* the eight enumerated categories of payments, creating a prohibition with respect to nonenumerated payments *and* an authorization with respect to the enumerated elements. Article 21.35B(a) (emphasis added). Construing Article 21.35B(a) as a mere outline of the Article 5.101 rate-making considerations renders it meaningless to automobile insurers and ignores the statute's application to other types of insurers.[3] Instead, Article 21.35B authorizes the solicitation and collection of premiums, taxes, and the other enumerated payments unless some intervening statute provides otherwise.[4]

■ Second, we construe the Article 5.101 "rates" to constitute "premiums" as contemplated by Article 21.35B(a). Despite extensive briefing on the issue, we are not convinced that technical etymologies of Article 21.35B's "premium" and Article 5.101's "rate" control our construction.[5] Because Article 21.35B addresses all insurers, it cannot speak in the exact terms of the various statutes addressing

subclasses of insurers, including Article 5.101. Instead, we utilize the plain meanings that produce the most coherent overall scheme. "The foundation of insurance is . . . risk distribution, and premiums are a function of calculated risk." *In re Tex. Ass'n of Sch. Bds.,* 169 S.W.3d 653, 658–59 (Tex.2005) ("The payment of the premium by the insured and the assumption of a specified risk by the insurer are the essential elements of the contract of insurance."); *accord Rosenstock v. Wheeler,* 310 S.W.2d 350, 353 (Tex.Civ.App.-Houston 1958, writ ref'd) ("A premium is the consideration paid by a person for insurance protection or coverage."). In addition to "premiums," Article 21.35B recognizes that insureds incur, as part of insurance policies, various other payment obligations not closely related to risk and cost distributions. Article 21.35B(a). Albeit with different terms, Article 5.101 focuses on the fundamental considerations of risk distribution. Article 5.101 produces "rates" for each "line of insurance" by balancing

3. The concurrence argues that construing Article 21.35B(a) as an affirmative source of authority 3 renders 21.35B(c), which uses similar authorizing language, meaningless. 243 S.W.3d at 628. But because 21.35B(a) covers only "application" and "issuance," while 21.35B(c) covers "issuance" and "renewal," 21.35B(c) is meaningful no matter how 21.35B(a) is read. *See* Article 21.35B(a), (c).

4. The concurrence agrees with our conclusion that Mid–Century can recoup the Authority fee without including the fee in its Article 5.101 filing, but rejects our interpretation of Article 21.35B as an affirmative source of authorization, arguing that 21.35B cannot authorize payments. 243 S.W.3d at 628. But under the concurrence's interpretation, neither can Article 5.101, for all parties stipulated that the Authority fee was not charged as part of a premium and was not included in Mid–Century's Article 5.101 rates. Instead, the parties agree that Mid–Century charged Ademaj the fee *directly.* As a result, the con

currence attempts to sustain the fee recoupment with an affirmative authorization from neither Article 5.101 nor Article 21.35B. To impose this fee by executive fiat violates Article 21.35B's "no payment may be solicited . . . other than" language (even under the concurrence's restrictive interpretation), as well as settled Texas administrative law. *See* ·*Cont'l Cas. Co. v. Downs,* 81 S.W.3d 803, 807 (Tex.2002) ("Construction of a statute by the agency charged with its enforcement is entitled to serious consideration *only if that construction is reasonable and does not contradict the statute's plain language.*" (emphasis added)).

5. Article 5.101's applicability provisions provide the best textual evidence and support our holding today. After setting out the Article's general scope in section 1(a), Article 5.101 provides that "[n]otwithstanding Subsection(a) of this section, this article does not apply to *premium rates*" for certain other insurance. Article 5.101, § 2(c) (emphasis added).

"risks" against various economic variables, such as "loss experience," "peculiar hazards," "profits," and "expenses of operation," among others. Art. 5.101, § 3(a), (c). Thus, the Article 5.101 rate process produces the premiums that Article 21.35B authorizes insurers to solicit and collect.

Ademaj argues that Article 5.101 requires the commissioner's inclusion of all costs and expenses of operation, including all taxes, in the Article 5.101 rate. *See id.* § 3(b)(4), 3(q). Ademaj further asserts that the only expenses that could be excluded from the rate were those listed in section 3(*o*). Because taxes and fees generally, and the Authority fee specifically, are not listed in section 3(*o*), Ademaj argues that Article 5.101 governs the Authority fee exclusively. We disagree.

Although Article 5.101's rate-setting scheme *may* account for the Authority fee, it need not always do so to the exclusion of the Article 21.35B payment authorization. Article 5.101 simply does not employ mandatory language: "[T]he commissioner *may* give *due consideration* to" the expenses enumerated in section 3(c); nothing in Article 5.101 *requires* the commissioner to use the Authority fee when calculating the benchmark rate. *Id.* § 3(c) (emphasis

added). As a result, even if the commissioner *could have* used the Authority fee in the benchmark rate calculation under section 3(c)(4) as an "expense" or under section 3(c)(13) as an "appropriate" factor, Article 5.101's permissive terms did not compel him to do so.[6]

■ Having determined that payments may fall under either Article 5.101 or Article 21.35B, we need not determine where the Authority fee most appropriately falls because the commissioner has already done so. "Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant App. Dist. v. Moore,* 845 S.W.2d 820, 822 (Tex. 1993).[7] The Insurance Code charges the commissioner with enforcing the Article 5.101 rate system in several ways. Under Article 5.101, the commissioner must "adopt a rating manual," and the manual must "be used by all insurers" unless they receive permission from the commissioner to use their own. Article 5.101, § 3(k). Article 5.101 also directs the commissioner to "promulgate by rule a benchmark rate"

---

6. The concurrence also argues that Article 5.101 requires the commissioner to consider the Authority fee, emphasizing the "excluding only" language in section 3(c)(4). 243 S.W.3d at 628. We agree that the "excluding only" language absolutely prohibits the commissioner's consideration of the section 3(*o*) elements. But no matter how strongly section 3(c)(4) excludes consideration of the section 3(*o*) elements, whatever remains is still subject to section 3(c)'s overriding permissive term "may." Article 5.101, § 3(c), (*o*). At most, the commissioner need only give "due consideration" to the elements not excluded by section 3(*o*), a mandate that emphasizes the commissioner's continuing discretion to consider some expenses but not others. *Id.* § 3(c).

7. *See also State v. Public Util. Comm'n of Tex.,* 883 S.W.2d 190, 196 (Tex.1994) ("[T]he contemporaneous construction of a statute by the administrative agency charged with its enforcement is entitled to great weight."); *Tex. Employer's Ass'n v. Holmes,* 145 Tex. 158, 196 S.W.2d 390, 395 (Tex.1946) ("[T]he practical interpretation of the Act by the agency charged with the duty of administering it is entitled to the highest respect from the courts."); *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269, 273 (Tex.1944) ("The contemporaneous construction of an act by those who are charged with the duty of its enforcement ... is worthy of serious consideration as an aid to interpretation, particularly where such construction has been sanctioned by long acquiescence.") (quoting 39 Tex. Jur. *Statutes* § 125 (1936)).

for each line of insurance. *Id.* § 3(b). Finally, section 3(c) gives the commissioner the power to decide what "consideration" each potential rate factor is "due." *Id.* § 3(c). Even if the commissioner has no explicit power to enforce Article 21.35B, the various Article 5.101 enforcement responsibilities empower him to make the threshold determination of whether or not a payment should be governed by Article 5.101 at all.

 To that end, the commissioner promulgated Rule 15, which does not require insurers to include the Authority fee in their Article 5.101 flex filings. Instead, Rule 15 directs insurers to collect the Authority fee from policyholders and simply notify them that the fee was being collected "in addition to the premium due" under the policy. 28 TEX. ADMIN. CODE § 5.205(b). The commissioner's interpretation deserves deference because it accords with the terms of the statute. First, the commissioner could reasonably have determined that the Authority fee falls within Article 21.35B(2)'s authorization for the solicitation and collection of "taxes" because the Legislature imposed the fee to finance the Authority. *See* TEX.REV.CIV. STAT. art. 4413(37), § 10 ("The fee imposed by this section is in addition to any other fee or tax imposed by law on an insurer."); *Conlen Grain & Mercantile, Inc. v. Tex. Grain Sorghum Producers Bd.*, 519 S.W.2d 620, 623 (Tex.1975) ("A tax is a burden or

charge imposed by the legislative power of the state upon persons or property to raise money for public purposes."). Moreover, we see no place for the commissioner to include the Authority fee in the benchmark rate because it is imposed as a flat fee. Whereas taxes and fees charged as a percentage of premium spread nicely throughout the entire menu of lines of available insurance, a flat fee such as the Authority fee cannot be so easily distributed. Because insurers' variable flex filings range from 30% below to 30% above the benchmark, including the Authority fee in the Article 5.101 calculation will distort the $1 recoupment in a substantial set of cases. Thus, we defer to the commissioner's conclusion that insurers wishing to recoup the Authority fee need not include it in their Article 5.101 filings.[8]

Ademaj asserts three final objections to this construction, none of which we find persuasive. Ademaj points to *American Alliance Insurance Co. v. Board of Insurance Commissioners*, 126 S.W.2d 741, 744 (Tex.1939), and Article 5.101's requirement that rates be "just, reasonable, [and] adequate" for the proposition that the Article 5.101 rates must include all taxes. *See* Article 5.101, § 3(b)(2); *Public Util. Comm'n v. Houston Lighting & Power Co.*, 748 S.W.2d 439, 439–40 (Tex.1987). Even if those cases apply to the statute here,[9] they do not require what Ademaj

---

**8.** Our holding here is limited, of course, to these specific circumstances: an insurer's charge both authorized by Article 21.35B and approved in advance by a commissioner's rule. While we might hold differently with respect to a charge unauthorized by Article 21.35B and/or unauthorized by the commissioner, we need not address those questions here.

**9.** While we did say in *American Alliance* that "the basic principles of rate-making in fire insurance" are not substantively different "from those in 'the ordinary system of utility

rate-making,'" the very next sentence is pertinent as well. *See* 126 S.W.2d at 744. "Some elements affecting the subject that are lacking in the former may be present in the latter; and vice versa." *Id. Houston Lighting & Power* is inapplicable to this case insofar as it deals with electric utility rate-making as opposed to automobile insurance regulation. That holding was based on administrative rules governing utilities, one of which required all incurred taxes to be included in utilities' reasonable and prudent operating expenses. *See Houston Lighting & Power*, 748

asserts. At most, they require only that taxes be "considered," *Houston Lighting & Power*, 748 S.W.2d at 441, and "taken into account," *Am. Alliance*, 126 S.W.2d at 742. They do not require that a fee necessarily be included in the final charge calculation. The commissioner met this standard by considering "expenses of operation" and other "appropriate" factors during the rate setting process, and by promulgating Rule 15, which represents the commissioner's explicit consideration of the tax as it affects insurance rates. *See* Article 5.101, § 3(c)(4), (12); 28 TEX. ADMIN. CODE § 5.205(a). As a result, the commissioner met the statutory requirement of producing section 3(b)(2)'s "just, reasonable, [and] adequate" rates, even without including the Authority fee.

Ademaj also asserts the filed rate doctrine to argue that interpreting Article 5.101 as applying only to premium charges will allow insurers to wrongfully impose charges on policyholders that were never filed with the commissioner. Such an interpretation, Ademaj asserts, would violate the filed rate doctrine because the filed rate of rate-regulated automobile insurers would not reflect the actual charge for automobile insurance. Ademaj cites *AT & T v. Central Office Telephone, Inc.* presumably for the proposition that the rate an insurer duly files is the only lawful charge it may pass on to policyholders. *See* 524 U.S. 214, 222, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998). But, while Ademaj is correct that the filed rate doctrine applies in Texas, *see Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 216–17 (Tex. 2002), he miscites the United States Supreme Court's holding in *AT & T* and is wrong about *how* the filed rate doctrine applies in Texas. *AT & T* described the

filed rate doctrine only as it applied within the confines of the Interstate Commerce Act. *See* 524 U.S. at 222, 118 S.Ct. 1956 ("Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge."). We held in *Southwestern Electric Power Co.* that "[t]he doctrine holds that a tariff filed with and approved by an administrative agency under a statutory scheme is presumed reasonable unless a litigant proves otherwise." 73 S.W.3d at 216. Nowhere in that decision did we hold that the doctrine prohibits an insurer from recouping a fee from insureds outside the rate when the appropriate regulatory agency has promulgated a valid rule permitting the insurer to do so. The application of the filed rate doctrine in this case is necessarily circumscribed by the legislative grant of authority to the commissioner to regulate premiums and cannot be applied to overrule the commissioner's exercise of discretion not to include the Authority fee in the premium regulated under Article 5.101.

Finally, Ademaj warns that reversing the court of appeals' decision will result in double charging of the Authority fee by insurers and deregulation of the automobile insurance industry. These fears are unfounded. This case stems from the commissioner's regulation of rates rather than any trend toward deregulation. The commissioner authorized insurers to recoup only the $1 Authority fee from policyholders. Any insurer choosing to charge the fee to policyholders both within and outside of the Article 5.101 rate would be charging double that which the commissioner permits and, as is the case for any type of impermissible double charging,

S.W.2d at 441 (citing 16 TEX. ADMIN. CODE § 23.21(b)(1)(D)). There is no such rule gov-

erning automobile insurers in Texas.

would be subject to administrative penalties. *See* Tex. Ins.Code § 84.021.[10]

*Service Life & Casualty Insurance Co. v. Montemayor* demonstrates the commissioner's willingness to confront these feared acts of double charging. *See* 150 S.W.3d 649 (Tex.App.-Austin 2004, pet. denied). In *Montemayor*, the insurer attempted to gain the commissioner's approval to charge a $50 policy fee in addition to its premium rate. *Id.* at 650. The commissioner refused to approve the fee, and an administrative law judge found the insurer had no legal authority to charge it. *Id.* The commissioner then signed an order agreeing with the administrative law judge, and the district court affirmed the commissioner's order. *Id.* The insurer appealed, arguing it had authority under Article 21.35B to charge premiums and policy fees as separate items under the "Act for the Regulation of Credit Life Insurance and Credit Accident and Health Insurance." *Id.* at 651.[11] The court of appeals, concluding the insurer implemented the fee solely to increase its revenue and profits, agreed with the commissioner and rejected the insurer's attempt to recoup the fee. *Id.* at 653. Thus, the result in *Montemayor* signals that the commissioner is well positioned to protect insureds from abusive and unregulated charges under his construct of Article 5.101.[12]

## III

Article 21.35B authorizes all insurers to solicit and collect both premiums and taxes. The Article 5.101 rate-making process produces auto insurance premiums, and in the process gives the commissioner the discretion to determine whether payments should be considered as part of the Article 5.101 rate (and, thus, Article 21.35B premium) or instead should be considered as another Article 21.35B payment. Because the commissioner made a reasonable determination that the Authority fee should be charged directly and not as part of the Article 5.101 premium, we hold that Mid–Century properly recouped the fee from Ademaj. Accordingly, we reverse the court of appeals' judgment and render a take-nothing judgment in favor of Mid–Century Insurance Company of Texas and Texas Farmers Insurance Company.

Justice O'NEILL filed a concurring opinion, in which Justice MEDINA joined.

Justice HECHT did not participate in the decision.

---

**10.** Again, the commissioner's ability to *consider* without necessarily including or excluding the Authority fee in all Article 5.101 rates is critical. In this case, Mid–Century did not include the Authority fee in its Article 5.101 filings. Accordingly, the commissioner accounted for that payment in his review under Article 21.35B(a)(2). But if, as Ademaj and the concurrence fear, an insurer were to attempt to double charge, the commissioner's flexibility would allow him to adjust the Article 5.101 fees accordingly. *See* Article 5.101, § 3(c)-(h). Article 5.101 also empowers the Commissioner to disapprove such surreptitious rate-filings. *Id.* § 3(f)-(h). We are confident that, contrary to the concurrence's suggestion, 243 S.W.3d at 629, courts will interpret terms like "policy fee" to prevent the wrongful imposition of the section 3(o) expenses. *See* Article 21.35B(a); Article 5.101 § 3(o).

**11.** The Act is similar to Article 5.101 in that it allows the commissioner to set a presumptive premium rate 11 e for credit life, credit accident, and health insurance and then permits credit insurers to charge premiums up to 30% above or below the presumptive premium rate. Tex. Ins.Code §§ 1153.103(a), 1153.105.

**12.** Although we do not adopt the Montemayor court's interpretation of Article 21.35B, the case's significance as an example of the commissioner reining in an insurer's attempt to double charge remains.

Justice O'NEILL, concurring, joined by Justice MEDINA.

I agree with the Court that Mid–Century and Texas Farmers Insurance Companies (collectively, "Mid–Century") lawfully recouped the Automobile Theft Prevention Authority (ATPA) fee from their policyholders. But the Court rests that conclusion on a construction of Insurance Code article 21.35B that could permit rate-regulated insurers to collect the items enumerated therein in addition to their filed rates in a manner that threatens to undermine the Legislature's efforts to create a fair and competitive rate system. Accordingly, I concur in the Court's judgment, but cannot join its opinion.

The Court concludes that section (a) of article 21.35B of the Insurance Code provides independent authorization for insurers to charge policyholders for the enumerated items—policy fees, taxes, service fees, and other specified charges.[1] A careful reading of the entirety of article 21.35B belies that construction. Section (a) of article 21.35B provides:

> (a) *No payment may be solicited or collected by an insurer* ... in connection with an application for insurance or the issuance of a policy other than:
>
> (1) premiums;
>
> (2) taxes;
>
> (3) finance charges;
>
> (4) policy fees;
>
> (5) agent fees;
>
> (6) service fees, including charges for costs described under Article 21.35A of this code;
>
> (7) inspection fees; or membership dues in a sponsoring organization.

Tex. Ins.Code art. 21.35B(a)[2] (current version at Tex. Ins.Code § 550.001(a)) (emphasis added). Section (d) of article 21.35B provides for criminal penalties for a violation of the statute. Read in conjunction with this penalty provision, the language I have emphasized suggests that section (a)'s purpose was not to *authorize* collection of the listed items but to *prohibit* the collection of any other charges. *See Bridgestone/Firestone, Inc. v. Glyn–Jones*, 878 S.W.2d 132, 133 (Tex.1994) (stating "[o]nly in the context of the remainder of the statute can the true meaning of a single provision be made clear"). I would hold that insurers may charge their policyholders for the items listed only if the charge has been included in their filed rates under article 5.101 or otherwise authorized by the Legislature or by the Commissioner of Insurance exercising his or her delegated authority. *See* Tex. Ins. Code art. 5.101.[3] This reading is consis-

---

1. The Court attempts to blunt the effect of its erroneous construction of article 21.35B by noting that its "holding here is limited [to circumstances where] an insurer's charge [is] both authorized by Article 21.35B and approved in advance by a commissioner's rule." 243 S.W.3d at 624 n. 8. But that limitation cannot be reconciled with the Court's conclusion that "Article 21.35B [is] an affirmative source of an insurer's authority to solicit and collect payments." The Court cites no law that would authorize the Commissioner or the courts of appeals "to prevent the wrongful imposition of the section 3(*o*) expenses." 243 S.W.3d at 626 n. 10.

2. Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 11.17, 1991 Tex. Gen. Laws 1063,

amended by Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 12.49, 1993 Tex. Gen. Laws 2666, *amended by* Act of May 18, 1995, 74th Leg., R.S., ch. 380, § 2, 1995 Tex. Gen. Laws 2928 [hereinafter article 21.35B]. Article 21.35B has since been recodified, but because the parties refer to the law as it stood when the suit was filed, we do the same. Act of May 20, 2003, 78th Leg., R.S., ch. 1274, § 26, 2003 Tex. Gen. Laws 4138 (current version at Tex. Ins.Code § 550.001(a)).

3. Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 2.01, 1991 Tex. Gen. Laws 952, *amended by* Act of May 30, 1993, 73d Leg.,

tent with that of the Commissioner in *Service Life & Casualty Insurance Co. v. Montemayor.* Response to Petition for Review at 4, *Service Life & Cas. Ins. Co. v. Montemayor,* No. 04–0897 (Tex. June 21, 2004). ("This section is not, however, blanket *authorization* for *all* insurers to charge policyholders for every item listed.").

Whether "premium" is a component of rate, as the court of appeals held, 202 S.W.3d 176, 182, or rate is a component of "premium," as the Court holds today, no one would argue that insurers may collect premiums that have not been authorized by the Commissioner, even though premiums are a charge enumerated in section (a) of article 21.35B. And other language in article 21.35B strongly indicates that section (a) does not independently authorize imposition of the listed charges. "Membership dues in a sponsoring organization" is an item listed under section (a)(8), yet section (c) provides that "an insurer may require that membership dues in its sponsoring organization be paid as a condition for issuance or renewal of an insurance policy." If, as the Court holds, section (a) authorizes insurers to charge the enumerated items, then section (c) is a nullity. We have often held that courts should avoid construing statutes in a manner that will render language meaningless. *Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1, 8 (Tex.2000) (citing *City of LaPorte v. Barfield,* 898 S.W.2d 288, 292 (Tex.1995); *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987)).

Finally, the Court's construction of article 21.35B is inconsistent with the comprehensive scheme the Legislature has created to regulate automobile insurance rates. In setting the benchmark rate, the Commissioner may consider a number of factors. Tex. Ins.Code art. 5.101, § 3(c). In the version of the statute that the parties agree applies here, those factors include all costs and expenses of operation, like taxes and the ATPA fee, *"excluding only those expenses"* that are disallowed under Subsection (*o*)" of section 3 of article 5.101. Tex. Ins.Code art. 5.101, § 3(c)(4) (emphasis added). Excluded expenses include certain administrative expenses exceeding 110% of the industry median, lobbying expenses, certain advertising expenses, judgments or fines for bad-faith insurance practices, civil or criminal penalties or fines, contributions to social, religious, political, or fraternal organizations, fees paid to advisory groups, and "any unreasonably incurred expenses, as determined by the commissioner." Tex. Ins.Code art. 5.101, § 3(*o*). The Court's interpretation of article 21.35B would allow insurers to recoup expenses disallowed under subsection (*o*), because the Court concludes the Commissioner has discretion to include or exclude any expenses in the article 5.101 rate, including the ATPA fee, based on the permissive statutory language "may give consideration to." *See* Tex. Ins.Code art. 5.101, § 3(c). That interpretation, however, is clearly flawed, as it renders the words "excluding only" in section 3(c)(4)

R.S., ch. 685, § 6.04, 1993 Tex. Gen. Laws 2603, *amended by* Act of May 25, 1995, 74th Leg., R.S., ch. 984, § 1, 1995 Tex. Gen. Laws 4936, *amended by* Act of May 25, 1997, 75th Leg., R.S. ch. 942, §§ 1, 2, 1997 Tex. Gen. Laws 2950, *amended by* Act of May 27, 1997, 75th Leg., R.S., ch. 1330, § 18, 1997 Tex. Gen. Laws 5030, *amended by* Act of May 22, 2001, 77th Leg., R.S., ch. 1071, § 1, 2001 Tex. Gen. Laws 2359 [hereinafter article

5.101]. We refer to the version of the statute in effect when this lawsuit was filed, as do the parties. However, effective December 1, 2004, the Legislature replaced article 5.101 with article 5.13–2. Act of June 2, 2003, 78th Leg., R.S., ch. 206, § 6, 2003 Tex. Gen. Laws 925. In 2005, the Legislature repealed article 5.13–2, effective April 1, 2007. Act of May 24, 2005, 79th Leg., R.S., ch. 727, § 18(d), 2005 Tex. Gen. Laws 2187.

meaningless. *Kerrville State Hosp.*, 28 S.W.3d at 8. If the Commissioner can exclude *only* the specified expenses, it suggests that he *must* consider other appropriate expenses.[4] Moreover, in setting the benchmark rate upon which individual insurers' rates are based, the Commissioner is to "produce rates that are just, reasonable, adequate and not excessive for the risks to which they apply, and not confiscatory." TEX. INS.CODE art. 5.101, § 3(b)(2). By definition, a rate that would not compensate an insurer for reasonable expenses like the ATPA charge imposed upon insurers under article 4413(37) would not be adequate. *Am. Alliance Ins. Co. v. Bd. of Ins. Comm'rs*, 126 S.W.2d 741, 742 (Tex. Civ.App.-Austin 1939, writ ref'd) (holding statute that imposed tax on insurers that could not be included in rate or passed on to policy holders was unconstitutional).

More importantly, the Court's decision today would allow insurers to circumvent the restrictions on rates that article 5.101 imposes by simply characterizing charges as "policy fees." The Court summarily dismisses that notion, reasoning that "[a]ny insurer choosing to charge the fee to policyholders both within and outside of the article 5.101 rate would be charging double that which the commissioner permits and, as is the case for any type of impermissible double charging, would be subject to administrative penalties." 243 S.W.3d at 625–26. But under the Court's reading of article 21.35B, the Commissioner would have no legal ground to require remedial action absent double charging. If an insurer imposed a "policy fee" to recover expenses barred under article 5.101, § 3(*o*), the insurer would be acting under the "affirmative source of … authority to solicit and collect payments" afforded by article 21.35B. 243 S.W.3d at 621.

## II.

While I disagree with the Court's interpretation of article 21.35B, I nevertheless conclude that Mid–Century was entitled to rely on Rule 5.205 and pass on the ATPA fee directly to its policyholders. 28 TEX. ADMIN. CODE § 5.205 (1992). I agree with Mid–Century and the Court that the flat ATPA fee simply does not neatly fit within the flexible rating program. Because the fee is imposed on a per-vehicle basis, spreading it among lines of coverage through the flexible rating program would mean that consumers who purchased all lines would pay a greater portion of the ATPA fee than those who bought only the minimum liability limits, resulting in a discriminatory rate. *See AT & T v. Cent. Office Tel. Inc.*, 524 U.S. 214, 223, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998) (recognizing that rates are discriminatory when similarly situated customers pay different fees for the same services). By empowering insurers to pass on the ATPA fee to policyholders in Rule 5.205, the Commissioner assured that consumers would not pay discriminatory rates, while protecting insurers' constitutional right to recoup expenses. *See id.; Am. Alliance Ins. Co.*, 126 S.W.2d at 742.

The crux of Ademaj's complaint is that Mid–Century violated the filed-rate doctrine by failing to include the ATPA fee in its rate filing with the Commissioner. *See AT & T*, 524 U.S. at 222, 118 S.Ct. 1956 (noting that, under the filed-rate doctrine, the rate a regulated carrier has filed is the only lawful charge). But to the extent the

---

4. Furthermore, if the statute gives the Commissioner discretion not to consider expenses, then the Commissioner also has discretion not to consider "a reasonable margin for profit," since the "may give due consideration" language applies to that factor as well. TEX. INS.CODE art. 5.101, § 3(c)(3).

doctrine applies in this context, its purposes have been served. The filed-rate doctrine assures, first, that the reasonableness of regulated rates is determined solely by the appropriate regulatory authority. *See Mincron SBC Corp. v. Worldcom, Inc.*, 994 S.W.2d 785, 789 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (citing *Keogh v. Chicago & Nw. Ry. Co.*, 260 U.S. 156, 161–64, 43 S.Ct. 47, 67 L.Ed. 183 (1922)). Second, the doctrine assures that rates imposed on consumers are nondiscriminatory. *Id.* Both of these purposes have been satisfied in this instance. Here, Rule 5.205 was adopted by the Commissioner in his rate-regulatory capacity under several provisions of the Insurance Code, including article 5.101 and article 5.98.[5] And, as I have said, the rule establishes a mechanism to provide for nondiscriminatory rates while protecting insurers' constitutional rights. While the rule may allow insurers to charge policyholders $1 more than 30% above the benchmark rate, in my view the rule harmonizes the objectives underlying the ATPA and article 5.101, and therefore provided the insurers a valid basis for the pass-through charge. *See R.R. Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex.1992). Consequently, I concur in the Court's judgment, but I do not join its opinion.

---

**5.** Article 5.98 authorizes the Commissioner to adopt reasonable rules appropriate to accomplish the purposes of chapter 5 of the Insurance Code, one of which was to give the Board of Insurance the power to fix just and reasonable automobile insurance rates.