Opinion issued May 14, 2024



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-22-00797-CV**

———————————

**ALTORNETT ALLEN, Appellant**

**V.**

**HOMEOWNERS OF AMERICA MGA, INC. AND HOMEOWNERS OF AMERICA INSURANCE COMPANY INC., Appellees**

---

**On Appeal from the 133rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-67596**

---

## MEMORANDUM OPINION

Altornett Allen alleged breach-of-contract and extra-contractual causes of action against Homeowners of America MGA, Inc. and Homeowners of America Insurance Company Inc. ("Insurers") in connection with a claim she made on her homeowners' insurance policy. Insurers moved for traditional summary judgment

on coverage and no-evidence summary judgment on Allen's extra-contractual causes of action. The trial court granted Insurers' combined motion and dismissed Allen's claims. Allen challenges the summary judgment rulings on appeal.

We affirm.

## Background

Winter Storm Uri struck Texas in February 2021. Allen claimed that "the combination of freezing temperatures and statewide power outages caused extensive damage to her property" when "the freeze caused the plumbing supply lines to burst in several areas of her home." She made a claim for property damage under her homeowners' insurance policy, which generally provided coverage limits of $173,353 for her dwelling and $104,012 for her personal property.

The dwelling coverage insures "against risk of direct physical loss," except loss caused by "freezing of a plumbing . . . system" or "discharge, leakage or overflow from within the system . . . caused by freezing." This exclusion does not apply—meaning freezing may be covered—if the homeowner used reasonable care to "maintain heat in the building" or "shut off the water supply and drain all systems and appliances of water." Conversely, for personal property, the policy includes coverage for the "accidental discharge or overflow of water or steam from within a plumbing . . . system" or "freezing of a plumbing . . . system" unless the homeowner

2

did not use reasonable care to keep the building heated or shut off the water supply and drain all systems and appliances of water.

However, a water damage endorsement limits Insurers' liability for "direct physical damage caused by sudden and accidental discharge or overflow of water or steam from within a plumbing . . . system" to $10,000. Based on the endorsement, Insurers paid Allen $10,000 on her claim, even though Allen's estimated replacement costs were more than five times that amount.

Allen sued Insurers for breach of contract, violations of the Unfair Settlement Practices Act and the Texas Prompt Payment of Claims Act under the Insurance Code, breach of the common law duty of good faith and fair dealing, and fraud. Insurers answered and requested a declaration that they properly applied the water damage endorsement's $10,000 cap. They also filed a combined motion for traditional summary judgment on Allen's breach-of-contract cause of action and no-evidence summary judgment on her extra-contractual causes of action.

In the traditional motion, Insurers argued that the summary judgment evidence conclusively proved that Allen's "dwelling and personal property losses [were] direct physical damage caused by sudden and accidental discharge of water from within a plumbing system" and thus her claim was subject to the water damage endorsement's coverage limit. Insurers also argued that the water damage endorsement applied to Allen's claim under the concurrent causation doctrine

3

because "freeze, pipe break, and water discharge acted concurrently in causing the dwelling and personal property loss." According to Insurers, the $10,000 payment under the water damage endorsement complied with the policy as a matter of law.

In the no-evidence motion, Insurers argued that if Allen's contract cause of action failed so did her extra-contractual causes of action absent evidence that Insurers committed an extreme act that caused an independent injury.

Allen disagreed that the water damage endorsement applies. She argued that the full policy limits of coverage applied "because *freeze* was the cause of the direct physical loss to the insured property, rather than an isolated discharge of water from within a plumbing system in the absence of a freeze." (Emphasis added.) She further argued that the concurrent causation doctrine did not apply because freeze was the independent proximate cause of the damage she claimed.

The trial court granted Insurers' motion; declared that Allen's "dwelling and personal property losses are direct physical damage caused by sudden and accidental discharge of water from within a plumbing system," and were "subject to the $10,000 special limit of liability in [the water damage endorsement]"; and rendered judgment that Allen take nothing on her claims.

**Traditional Summary Judgment on Breach of Insurance Policy**

Allen contends that the trial court erred in granting a traditional summary judgment on her breach-of-contract cause of action and Insurers' declaratory judgment action. This issue turns on whether the plain language of the policy limits coverage to $10,000 for water damage caused by freeze.

## A. Standard of review

Our review of a traditional summary judgment is de novo. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). To obtain a traditional summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021); *see* TEX. R. CIV. P. 166a(c). We consider the evidence in the light most favorable to the nonmovant. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 551 (Tex. 2019).

## B. Contract interpretation

We interpret insurance policies using the rules of contract construction. *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 198 (Tex. 2022). We determine the parties' intent through the terms of the policy, giving words and phrases their ordinary meaning, informed by context. *Id.* We examine the entire insurance policy, read all its parts together, and seek to give effect to all its provisions

so that none will be meaningless. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).

If we determine that only one party's interpretation of the insurance policy is reasonable, the policy is unambiguous, and the reasonable interpretation should be adopted. *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). But if both parties offer reasonable but conflicting interpretations, we adopt the construction that favors coverage. *Dillon Gage Inc. of Dall. v. Certain Underwriters at Lloyds Subscribing to Policy No. EE1701590*, 636 S.W.3d 640, 643 (Tex. 2021).

## C. No fact issue precluded summary judgment on breach of contract

Allen argues that the trial court misinterpreted the policy when it concluded that Insurers did not breach the policy because her losses were "direct physical damage caused by sudden and accidental discharge of water from within a plumbing system and [] subject to the [water damage endorsement's] $10,000 special limit of liability." As she interprets the policy, the water damage endorsement's limitation does not apply to direct physical damages caused by freeze.

The water damage endorsement reads:

LIMITED WATER DAMAGE COVERAGE

The following is added under SECTION I - PROPERTY COVERAGES:

F. SPECIAL LIMITS OF LIABILITY

1. WATER DAMAGE COVERAGE

a. The total limit of liability for water damage to covered property is $10,000. This limit applies to all damaged covered property under Coverage A, B, C and E combined.

b. This limit applies to direct physical damage caused by sudden and accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

c. This limit applies to Foundation coverage provided under E. Additional Coverages.

d. This limit includes the cost of tearing out and replacing any part of the building necessary to repair the system from which the discharge occurred.

e. We do not cover loss to the system from which the water escaped.

f. This coverage does not increase the limit of liability that applies to the damaged covered property.

Except as stated in this endorsement, we do not provide coverage for any loss precluded by another provision in this policy.

All other provisions of your policy apply.

Our sibling court in Houston interpreted an identical water damage endorsement as limiting coverage under analogous facts in *Kayihura v. Homeowners of America MGA, Inc.*, No. 14-22-00680-CV, 2023 WL 5286911, at *3–5 (Tex.

App.—Houston [14th Dist.] Aug. 17, 2023, pet. denied) (mem. op.). There, the same insurers obtained summary and declaratory judgments that the limit in the identical water damage endorsement applied to a homeowner's claim for substantial property damage caused by burst pipes in Winter Storm Uri. *Id.* at \*1–2. Like Allen here, the homeowner argued that although the endorsement applied to one type of *peril*—accidental discharge of water—it did not apply to the particular peril—freezing—that damaged his home. *Id.* at \*4. The court disagreed, reading the endorsement "as unambiguously applying to a particular type of *damage*—water damage." *Id.* (emphasis added).

The court reasoned, "Whether or not the water damage is deemed to be caused by the peril of freezing or the sudden discharge of water from the plumbing system is not a material factor to the application of the limitation clause under the policy." *Id.* The endorsement's first clause plainly stated that "[t]he total limit of liability for *water damage* to covered property is $10,000" and that "[t]his limit applies to all damaged covered property" under the dwelling and personal property coverages. *Id.* Although the second clause specifically included direct physical damage caused by the peril of sudden and accidental discharge or overflow of water from within a plumbing system, "no part of the provision exclude[d] water damage precipitated by a freeze." *Id.*

Further, "[e]ven if the endorsement [was] interpretated to focus on covered perils (as opposed to damage)," its limitation of liability still applied because the homeowner's interpretation required the court to read an exception into the endorsement for water damage from plumbing discharge because of freeze. *Id.* at *5. Because the homeowner acknowledged that the damage—even if prompted by the peril of freeze—was "water" damage, the summary judgment for the insurers was proper. *Id.*

We agree with and adopt *Kayihura*'s interpretation of the water damage endorsement. Applying that interpretation, we also conclude that the limitation of liability applies to Allen's claim. Like the *Kayihura* homeowner, Allen acknowledged in her notice of claim letter that she suffered "water damage to [her] dwelling and personal property caused by freeze." Thus, the trial court properly concluded that there was no genuine issue of material fact on breach of the policy. *See RSUI Indem. Co.*, 466 S.W.3d at 124.

We overrule Allen's first issue.

### No-Evidence Summary Judgment on Extra-Contractual Claims

Allen also contends that the trial court erred in granting a no-evidence summary judgment on her extra-contractual causes of action for bad faith, violations of the Unfair Settlement Practices Act and the Texas Prompt Payment of Claims Act, and common law fraud. As framed by Allen, this issue turns exclusively on whether

the summary judgment on the breach-of-contract cause of action stands, which we have answered in the affirmative.

## A. Standard of Review

We review a no-evidence summary judgment under a legal sufficiency standard. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003) ("A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict."). A no-evidence summary judgment will be sustained when: "(a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact." *Id.* at 751.

## B. No evidence of extra-contractual claims

Allen argues that the erroneous summary judgment on her breach-of-contract cause of action led to an erroneous summary judgment on her extra-contractual causes of action. Because we have already determined that the breach-of-contract summary judgment was not erroneous, this argument fails. The summary judgment on breach of contract prevents recovery on Allen's extra-contractual causes of action absent evidence of Insurers' extreme conduct or statutory violation that causes an

injury independent of the right to recover policy benefits. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 499 (Tex. 2018) (insured must show loss of benefits or statutory violation that results in injury independent of loss of benefits); *see also Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019) (same).

Here, Allen's alleged injury rests on loss of policy benefits. She has not pointed to any evidence of a loss of benefits or statutory violation that resulted in an independent injury in the summary judgment record nor has she argued that any such evidence exists. *Cf. Walker v. Eubanks*, 667 S.W.3d 402, 409 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (trial and appellate courts need not sift through summary judgment record for evidence of fact issues absent guidance from nonmovant). Under the applicable standard of review, we cannot conclude that the trial court erred by granting Insurers' motion for no-evidence summary judgment on Allen's extra-contractual causes of action. *See id.*

We overrule Allen's second issue.

## Conclusion

We affirm the trial court's judgment.

Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Hightower.

11