**PUBLIC UTILITY COMMISSION OF TEXAS**

v.

**HOUSTON LIGHTING & POWER COMPANY, et al.**

No. C–5705.

Supreme Court of Texas.

Dec. 15, 1987.

Rehearing Denied May 4, 1988.

Jim Mattox, Atty. Gen., Carole J. Vogel, Fernando Rodriguez, Karen Pettigrew, Office of the Atty. Gen., Austin, for petitioner.

Hugh Rice Kelly, G. Schalles, III & H. Leven, Houston Lighting & Power Co., Houston, Robert J. Hearon, Jr., Graves, Dougherty, Hearon & Moody, Austin, Finis Cowan, Jr., Baker & Botts, Jefferson D. Giller, Lee C. Clyburn, Fulbright & Jaworski, Austin, for respondents.

## OPINION

GONZALEZ, Justice.

This cause is an administrative appeal addressing the scope of authority of the Public Utility Commission (PUC) to allocate costs, profits and tax benefits between ratepayers and shareholders. Houston Lighting & Power Co. (HL & P) applied to the PUC for a rate increase. After a hearing, the final order of the PUC provided that a 16.85% return on equity was reasonable. However, the PUC penalized HL & P .5% for alleged imprudent management of two nuclear power projects—the Allen's Creek Nuclear Project (ACNP) and the South Texas Nuclear Project (STNP). The PUC also held that the ACNP should have been cancelled on January 1, 1980 and that all expenditures on the project after this date were disallowed and not recoverable from the ratepayers.

On appeal by HL & P, the trial court reversed the order of the PUC on the grounds that the PUC had no statutory authority to impose a penalty on a utility's rate of return. The trial court also reversed and remanded the PUC's order as it related to the recovery of ACNP cancellation costs, the treatment of tax benefits associated with $166 million in disallowed ACNP expenditures and the allocation of litigation expenses attributable to a suit between HL & P and Brown & Root involving the STNP. The trial court also remanded to the PUC for specific findings regarding Dow Chemical Company's assertions of rate discrimination by HL & P.

The court of appeals affirmed the judgment of the trial court in all respects, except that it deleted the trial court's conclusion that the PUC's finding of HL & P's mismanagement was "premature and presumptuous." 715 S.W.2d 98. We reverse and render in part the judgment of the court of appeals and affirm in part.

### Facts

Plans for ACNP were initiated by HL & P in August of 1972, as a two-unit 2400 megawatt plant. However, in September of 1975, HL & P considered cancelling ACNP because its electric demand fore-casts had been overly optimistic. While HL & P evaluated the future of ACNP, all activity on the project was suspended. HL & P eventually announced plans in late 1976 to cancel one of the 1200 megawatt units. Construction then resumed on the other unit.

From 1976 to 1979, three additional factors emerged which made continued expenditures by HL & P for the development of ACNP more venturesome: (1) The capital costs for nuclear plants escalated more rapidly than comparable costs for coal powered generation, (2) the safety regulations which governed the construction of ACNP increased substantially due to the Three Mile Island incident and (3) the licensing process for ACNP became stalled in 1979 because of construction difficulties.

Despite these obstacles, it was not until early 1981 that HL & P renewed consideration about cancelling ACNP. The project was ultimately cancelled by HL & P on August 26, 1982 at a total loss of $361 million. In 1982 HL & P filed with the PUC an application for a rate increase.

After considering all of the evidence in the record, the PUC set the rate of return at 16.35% (after the .5% penalty) and concluded that a prudent utility would have cancelled ACNP as of January 1, 1980. As a result, all ACNP related expenses incurred *after* January 1, 1980, in the amount of $166 million, were, by definition, imprudent. All ACNP related expenses incurred *prior* to January 1, 1980, in the amount of $195 million dollars, were prudent. The final order of the PUC provided that these prudently incurred expenses could be recovered by HL & P from its ratepayers through a ten year amortization plan. By the end of ten years, HL & P would recoup all of the $195 million as cost of service revenues. In addition, the amount paid by HL & P in income taxes on those revenues would be recovered in the rate structure.

The PUC recognized that HL & P intended to write-off for tax purposes, the $166 million of imprudent ACNP expenditures. The effect of such a write-off would provide tax savings to HL & P and cause it to

bear less than its $166 million share of ACNP. In order to give effect to its ruling that HL & P bear the full burden of these imprudent expenses, the PUC determined that any tax savings derived from a write-off should inure to the benefit of the ratepayers.

HL & P argues that it should be allowed to retain all tax savings associated with the tax write-off of the $166 million. Under HL & P's proposal, its actual tax liability would be reduced by the savings attributed to the tax write-off of the disallowed expenses. However, for ratemaking purposes, HL & P's cost of service would not reflect these tax savings in the federal income tax allowance. Thus, HL & P's cost of service would be overstated by the amount that HL & P saves as a result of its tax write-off. In turn, the federal income tax expense passed on to the ratepayers would not be reduced to reflect HL & P's tax savings. The result is that the ratepayers of HL & P would be required to pay an amount for federal income tax expense in excess of that actually borne by the utility. This additional income tax expense is the benefit that HL & P seeks to retain.

### Recovery of Operating Expenses

■ It is generally recognized that the establishment of just and reasonable rates requires consideration of three factors: (1) the utility's reasonable and prudent operating expenses; (2) the rate base; and (3) a reasonable rate of return. *Railroad Commission of Texas v. Entex, Inc.,* 599 S.W. 2d 292, 294 (Tex.1980); *Railroad Commission of Texas v. Houston Natural Gas Co.,* 289 S.W.2d 559, 573 (Tex.1956); *Tex.Rev. Civ.Stat.Ann. art.* 1446c, § 39. Included in reasonable and prudent operating expenses are all taxes incurred by the utility,

including federal income taxes. 16 *Tex.Admin.Code* § 23.21(b)(1)(D); *Suburban Utility Corp. v. Public Utility Commission,* 652 S.W.2d 358 (Tex.1983); *see also Galveston Electric Co. v. City of Galveston,* 258 U.S. 388, 42 S.Ct. 351, 66 L.Ed. 678 (1922).

■ In the ratemaking process, the amount of a utility's operating expenses has a direct effect upon the calculation of its rate. When a utility can demonstrate an increased level of reasonable and prudent operating expenses, its rate will be raised. To insure that its rate is just and reasonable, a utility must prove that all operating expenses have been actually incurred. *Suburban Utility Corp., see also Federal Power Commission v. United States Pipeline Co.,* 386 U.S. 237, 87 S.Ct. 1003, 18 L.Ed.2d 18 (1967).[1]

■ Not all expenses that are incurred by a utility in providing service will necessarily be categorized as reasonable operating expenses for ratemaking purposes. Texas regulatory agencies possess the discretionary authority to disallow those operating expenses which are not prudently or actually incurred by a utility. *Tex.Rev.Civ. Stat.Ann. art.* 1446c, § 41(c)(3). Such expenses are considered to be improper and may not be used in the calculation of the utility's new rate. If improper expenses are disallowed from the rate structure, the shareholders of the utility absorb them rather than the ratepayers. *See Suburban Utility Corp.; see generally E. Gelhorn & R. Pierce, Jr., Regulated Industries* 97 (1982).

In this case the PUC asserts that the court of appeals erred as a matter of law by allocating the tax savings attributable to HL & P's write-off of the ACNP disallowed expenses to the utility and its shareholders rather than to the ratepayers. The

---

1. In *United States Pipeline Co.,* a utility was a member of an affiliated group of companies which had filed consolidated income tax returns. The total consolidated tax expense was less than the total tax expense if separate returns had been filed. For ratemaking purposes, the utility wanted its own tax expense to be based upon the amount that it would have paid if it had filed a separate return. The Commission refused to calculate a rate of return by

converting a hypothetical tax payment into a reasonable operating expense. It ordered the utility's tax expense to be based upon the consolidated taxes it had actually paid.

The Supreme Court upheld the ruling of the Commission. It reasoned that if rates were established as proposed by the utility, the utility and its shareholders would receive the fair return to which they were entitled plus the full amount of an expense never in fact incurred.

issue before this court then is whether HL & P can recover from ratepayers a federal income tax expense which it did not incur. The resolution of this issue does not rest upon a determination of whether the disallowed expenses which generated the tax savings have been included in the calculation of the new rate. The question is whether HL & P actually incurred this tax expense.

### Allocation of Tax Savings from Disallowed Expenses

In *Suburban Utility Corp.*, a utility which operated as a Subchapter S corporation sought to have the federal income tax expense that it would have been required to pay as a conventional corporation included in its cost of service as a reasonable and prudent operating expense to be recovered from its ratepayers. Under the Internal Revenue Code, this Subchapter S corporation did not pay any federal income tax because all of its profits were paid directly to its two shareholders. The shareholders in turn paid taxes on the profits as ordinary income. The PUC refused to include the higher tax expense in the utility's cost of service on the basis that a tax expense which has not been actually incurred by a utility should not be recovered from its ratepayers.

On appeal this court followed the reasoning set forth by the United States Supreme Court in *United States Pipeline Co.*, 386 U.S. at 237, 87 S.Ct. at 1003, and held that the utility was entitled to a just and reasonable rate which was based upon only the tax expense that had been actually incurred or the tax expense the utility would have incurred as a conventional corporation, whichever is less. Accordingly, *Suburban Utility Corp.*, requires that ratepayers not be held accountable for more than the actual tax expense of a utility. *See also Southern Union Gas Co. v. Railroad Commission of Texas*, 701 S.W.2d 277 (Tex.App.—Austin 1985, writ ref'd n.r.e.) in which hypothetical income tax liability was not permitted to be included in the utility's cost of service.

Thus, ratepayers can be held accountable only for those tax expenses that are *actually* incurred by a utility. Accordingly, when a utility claims federal income tax deductions for *all* of the expenses it has incurred, the resulting tax savings will necessarily reduce the utility's actual federal income tax expense. This will be the effect regardless of whether the expenses are allowed or disallowed in the calculation of a new rate.

Consequently, we hold that the tax savings generated from HL & P's imprudent expenses should inure to the benefit of the ratepayers. The utility's rates must reflect the tax liability actually incurred.

### The STNP Litigation

Next we turn to the question of allocating any costs and recoveries that may arise out of the STNP litigation. It is undisputed that at the time of the PUC's decision, the STNP litigation was still pending. Therefore, the PUC's, the trial court's and the court of appeals' decisions concerning allocation of the litigation costs and recoveries were premature and advisory. A court has no jurisdiction to render an advisory opinion on a controversy that is not yet ripe. *California Products, Inc. v. Puretex Lemon Juice, Inc.*, 160 Tex. 586, 334 S.W.2d 780, 782 (1960); *Morrow v. Corbin*, 122 Tex. 553, 62 S.W.2d 641, 646 (1933). A determination of the proper allocation of litigation costs and recoveries should be made only after resolution of the litigation. Therefore, the PUC will refrain from deciding this issue until such time as the actual amounts of the litigation costs and recoveries are determined.

That part of the court of appeals judgment allocating the tax benefits associated with the disallowed ACNP costs to HL & P and its shareholders is reversed and rendered. The part of the judgment allocating the STNP related litigation costs and recoveries, if any, is reversed and remanded. In all other respects, the judgment of the court of appeals is affirmed. The cause is remanded to the PUC for further consideration consistent with this opinion.

## ON MOTION FOR REHEARING

WALLACE, Justice, dissenting.

In this rate hearing, the Public Utility Commission disallowed $166,000,000 of the cost expended by Houston Lighting & Power in preparation for building the Allen Creek Nuclear Plant. The effect of the Public Utility Commission's order was to declare that the $166,000,000 was not expended for utility purposes.

Houston Lighting & Power, Inc., is a wholly owned subsidiary of Houston Industries, Inc., which consists of business operations other than public utilities. The effect of the Public Utility Commission order disallowing $166,000,000 cost was to transfer that cost item from Houston Lighting & Power to the shareholders of Houston Industries, Inc. Thus, the $166,000,000 was no longer a factor in determining Houston Lighting & Power Company's rate base.

Public Utility Commission's Substantive Rule § 23.2(2)(B)(I), codified at 16 T.A.C. § 23.2, requires all large utilities to maintain their books and records in accordance with Federal Energy Regulatory Rules. The FERC rules require separate allocation of utility and non-utility financial data. This is to assure that only those costs reasonably necessary in providing utility service to the customers will be included in the utility rate base. If the utility is a component of an entity with other business interests, as is the case with Houston Lighting & Power, it may not use utility rates to subsidize those other activities.

The cost of utility services includes Federal Income Tax on the taxable revenues and the tax deductible expenses incurred in providing service. PURA § 41(c)(2), and PUC Substantive Rule § 23.21(b)(1)(d). When a corporation such as Houston Industries, Inc., and Houston Lighting & Power produce taxable revenues and deductible expenses they must be segregated on the basis of whether they are attributable to utility service or non-utility service.

FERC regulations provide that if expenses which generate tax deductions are included in the cost of service, the deduction will reduce the cost of service for rate making purposes. Columbia Gulf Transmission Co., 23 FERC (CCA) ¶ 61.396 (June 22, 1983). In the case before us, the PUC disallowed the $166,000,000 for rate making purposes, so the rate payers will not bear that expense. Therefore, they are not entitled to the benefit of the deduction. The deductions go to the party who bears the expense, which in this case would be the shareholders of Houston Industries, Inc. This is the standard procedure consistently used by the Public Utilities Commission, but rejected by it in this case.

The PUC's action in this case could result in a substantial cost to Houston Lighting & Power rate payers. The Internal Revenue Code provides accelerated depreciation on certain items of equipment and machinery to integrated companies which comply with FERC regulations. However, the Code requires that deduction permitted must go to the entity incurring the costs, *i.e.*, utility rated versus non-utility rated. I.R.C. § 167($l$)(3)(G), 168(i)(9) (West Supp.1988); *see* 1 Fed.Tax Reg. §§ 1.167($l$)–1(h), 1.167(a)–11(b)(6), 1.167($l$)–3 (West 1988). If this is not done, then all the depreciation must be on a straight line basis. This means that not only the non-utility operations of Houston Industries, Inc., but also Houston Lighting & Power could lose the substantial advantage gained on accelerated depreciation. Should this occur, then Houston Lighting & Power would be entitled to an increase in rates so as to make a reasonable rate of return on its investment.

Our opinion in this case relied on the "taxes actually paid by its shareholders" language used by this court in *Suburban Utility Corp. v. Public Utility Commission of Texas*, 652 S.W.2d 358 (Tex.1983). That case was considered in an altogether different context. There, this court held that the tax actually paid by the shareholders should be included in the utility rate base because it was a Subchapter S corporation which passed all revenue on to the shareholders who individually paid taxes. The utility paid no income tax. Here, the utility pays its own taxes, so the corollary should be that the taxes paid (or deductions claimed) by the utility should be credited to the rate payer. This is not authority for

the rate payer to be given credit for tax deductions earned by expenses paid by the shareholders.

To permit the PUC to disallow $166,000,-000 as non-utility related expenses and then to deny the shareholders who must bear those expenses any tax deductions arising from that expense is tantamount to permitting the Public Utility Commission to fine the shareholders for poor management. The majority expressly holds that the PUC has no authority to do so. I would reverse that part of the court of appeals' judgment which decrees that any tax benefits resulting from the $166,000,-000 expense must be passed through to the rate payers.