**Affirmed and Opinion filed June 4, 2026**



In The

# Fifteenth Court of Appeals

## NO. 15-25-00018-CV

**APPELLANT PUBLIC UTILITY COMMISSION OF TEXAS // CROSS-APPELLANT, CITY OF DENTON OPERATING AS DENTON MUNICIPAL ELECTRIC**

**V.**

**APPELLEE CITY OF DENTON OPERATING AS DENTON MUNICIPAL ELECTRIC // CROSS-APPELLEE PUBLIC UTILITY COMMISSION OF TEXAS**

**On Appeal from the 459th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-23-008974**

## OPINION

This is an administrative appeal from an order by the Public Utility Commission of Texas (the Commission) setting the wholesale transmission rates of Denton Municipal Electric (Denton Electric). Denton Electric is a utility owned by the City of Denton providing electric transmission service. The Commission issued

a Final Order setting the rates and ordering Denton Electric to file an interim proceeding. Denton Electric sought judicial review of the order, and the trial court reversed in part and affirmed in part. Both Denton Electric and the Commission challenge the trial court's order in this Court. We affirm the district court's judgment in full.

## BACKGROUND

### I. Commission Proceedings

The Legislature enacted the Public Utility Regulatory Act (PURA) to protect the public interest in the rates and services of electric utilities. Tex. Util. Code § 31.001(a). The Act established a comprehensive and adequate regulatory system to assure just and reasonable rates and operations. *Id.*

"There are three principal components to the electricity industry: 'generation of power; transmission of that power on high-voltage lines over long distances; and distribution of power over shorter distances to the ultimate consumer.'" *TXU Generation Co., L.P. v. Pub. Util. Comm'n of Tex.*, 165 S.W.3d 821, 827 (Tex. App.—Austin 2005, pet. denied) (quoting *City Pub. Serv. Bd. of San Antonio v. Pub. Util. Comm'n*, 9 S.W.3d 868, 870 (Tex. App.—Austin 2000), *aff'd*, 53 S.W.3d 310, 312 (Tex. 2001)). This case involves only the transmission element. Utilities in Texas have voluntarily interconnected their transmission systems forming a single grid known as the Electric Reliability Council of Texas (ERCOT). *City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d at 312. Under PURA, all transmission-owning utilities are required to provide "open access" to their transmission facilities for wholesale transmission. *Id.* at 312–13; *see* Tex. Util. Code § 35.004.

The Commission has authority over utilities providing wholesale

transmission service within the ERCOT market. Tex. Util. Code § 35.005. This includes jurisdiction over municipally owned utilities to regulate their wholesale transmission rates. *Id.* § 40.004(1). The Commission calculates transmission rates based on a utility's transmission cost of service which "includes all reasonable and necessary expenses, plus a reasonable return on investments, associated with owning and operating its transmission network." *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 109 S.W.3d 130, 132 (Tex. App.—Austin 2003, no pet.); Tex. Util Code § 35.004(d); 16 Tex. Admin. Code § 25.192(c). The Commission notified the City of Denton that it was conducting an inquiry into the reasonableness of Denton Electric's wholesale transmission rates and ordered it to file a rate filing package. On November 1, 2021, Denton Electric filed an Application to Change Rates for Wholesale Transmission Service with the Commission.

As for a return on investments, under Commission rules, a municipally owned utility can choose to calculate its rate of return based on its debt service coverage ratio which includes the utility's actual debt service and a reasonable coverage ratio. 16 Tex. Admin. Code § 25.192(c)(3). At the time Denton Electric filed its application, the Commission's instructions for filing a rate filing package (the instructions are referred to as the "RFP") provided that a return based on the transmission service provider's "debt service coverage levels stated in the [transmission service provider's] most recently issued bond and debt covenants plus additional coverage of 0.25 for municipal utilities and river authorities *shall be presumed reasonable*." Denton Electric sought to use a 1.75x debt service coverage ratio which reflected 0.50x added to the City's required 1.25x debt service coverage for the City's utilities.

On October 6, 2022, while Denton Electric's application was pending, the

3

Commission held an open meeting at which it considered another transmission service provider's application for changes to its wholesale transmission service rates. During that meeting, the commission voted to modify the language in the RFP and eliminate the language that additional coverage of 0.25x would be presumed reasonable.

On December 1, 2022, Denton Energy filed an amended application and continued to seek to use a 1.75x debt service coverage ratio. Denton Electric also requested to include in its transmission revenue requirement an 11% general fund transfer. Under the Texas Government Code, a municipal owned utility may transfer funds from the utility to the city's general fund, referred to as a "general fund transfer." Tex. Gov't Code § 1502.059. Denton Electric claimed it paid the City as a general fund transfer a franchise fee (5% of its gross revenues) and a return on investment component (6% of its revenues).

After a hearing on the merits at the State Office of Administrative Hearings, the Administrative Law Judges (ALJ) issued a proposal for decision. The Commission issued a final order (the "Commission Order") mostly consistent with the ALJ's findings. As relevant here, the order (1) found the 6% return on investment component of the general fund transfer was not sufficiently substantiated, (2) found that the debt service coverage ratio should be set at 1.25x, and (3) required Denton Electric to file an interim transmission cost of service proceeding within 90 days of the final order. Denton Electric filed a motion for rehearing which was overruled by operation of law.

## II. Judicial Review

Denton Electric filed a petition for judicial review in the Travis County District Court. Denton Electric claimed the Commission improperly excluded the 6% return on investment component from Denton Electric's general fund transfer,

4

improperly limited Denton Electric's debt service coverage ratio to 1.25x, and impermissibly required Denton Electric to file an interim transmission cost of service proceeding within 90 days. After holding a hearing on the merits, the trial court held that the Commission's decision to set Denton Electric's debt service coverage ratio at 1.25x "was arbitrary and capricious and was improperly based on a Rate Filing Package that was modified in violation of state law (the Texas Open Meetings Act) and Commission Rule, thus constituting a violation of both a statutory provision and required procedure, and is hereby reversed." The trial court denied all other relief. Both Denton Electric and the Commission appealed the judgment.

## ANALYSIS

The Commission asserts that substantial evidence supports its conclusion that a DSCR of 1.25x provides Denton electric with a reasonable rate of return. In two issues, Denton Electric challenges the Commission's (1) exclusion of the 6% return on investment component of its general fund transfer and (2) requiring Denton Electric to file an interim transmission cost of service application.

## I. Standard of Review

Under PURA, judicial review of the Commission Order is under the substantial evidence standard. Tex. Util. Code § 15.001. Under substantial evidence review, "a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion." Tex. Gov't Code § 2001.174. However, a court

> shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>> (A) in violation of a constitutional or statutory provision;
>> (B) in excess of the agency's statutory authority;

5

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.* § 2001.174(2). Each of these grounds presents "a question of law subject to de novo review." *Save Our Springs All., Inc. v. Tex. Comm'n on Env't Quality*, 713 S.W.3d 308, 320 (Tex. 2025).

## II. The District Court Properly Reversed the Commission's Decision to set Denton Electric's Debt Service Coverage Ratio at 1.25x Because the Commission's Decision in Reliance on the Modified RFP was Arbitrary.

In its sole issue, the Commission contends that the trial court erred in reversing its decision to set Denton Electric's debt service coverage ratio at 1.25x because the RFP was properly modified and, regardless of which RFP is used, the Commission's decision is supported by substantial evidence. "Fundamentally, a public utility's rates must be just and reasonable." *Cities for Fair Util. Rates v. Pub. Util. Comm'n of Tex.*, 924 S.W.2d 933, 935 (Tex. 1996) (internal quotation marks and citation omitted); *see* Tex. Util. Code § 31.001 (providing that PURA was enacted to, among other things, assure rates "that are just and reasonable"). But a utility is entitled to rates that "provide a return on the invested capital included in its rate base . . . ." *Id.*; *City Pub. Serv. Bd.*, 109 S.W.3d at 132 (explaining that a utility's transmission cost of service includes a reasonable return on investments).

A municipally owned utility may calculate its return using one of four methods: cash flow, debt service coverage ratio, times interest earned ratio, and rate of return. Denton Electric filed an application to change its rates for wholesale transmission service in November 2021 and calculated its return using the debt

6

service coverage method. Under Commission rules, this rate of return may be determined based on the utility's actual debt service and a reasonable coverage ratio. 16 Tex. Admin. Code § 25.192(c)(3). The Commission considers the utility's debt service payments (principal and interest) during a historical test year.[1] At the time Denton Electric filed its initial application, the RFP instructions provided that "[a] return based on the [transmission service provider's] debt service expenses as of the end of the Historic Year, and the debt service coverage levels stated in the [transmission service provider's] most recently issued bond and debt covenants *plus additional coverage of 0.25* . . . shall be presumed reasonable." Denton Electric cited the presumption in its application and sought to use a 1.75x debt service coverage ratio, explaining it was based on a 1.25x debt service coverage plus 0.50x to address other circumstances, including a planned change to the City's debt service policy to require a 1.50x debt service coverage. Six months after Denton Electric filed the Application, the Commission ordered Denton Electric to file a depreciation study with its application.

On October 6, 2022, before Denton Electric filed an amended application, the Commission considered in an open meeting the application of another transmission service provider for changes to its wholesale transmission service rates. During that meeting, one commissioner expressed discomfort with the language in the RFP creating the presumption of reasonableness. He expressed concern that it could lead to "tens if not hundreds of millions of dollars of transmission that can just be presumed to be reasonable and that money disappears out of ratepayers' pockets with no explanation of where it goes." The Commission then voted at that meeting to modify the language in the RFP and eliminate the language that created the reasonable presumption. The language now reads "[a]

---

[1] Denton Electric's application was based on a test year ending September 30, 2020.

requested return may be based on the [transmission service provider's] debt service expense as of the end of the Historic Year and the debt service coverage levels stated in the [transmission service provider's] most recently issued bond and debt covenants."[2]

Denton Energy filed an amended application on December 1, 2022 and again requested to use a 1.75x debt service coverage ratio. It based this request on a resolution from the City ratifying that Denton Electric would seek to maintain a debt service coverage of 1.50x on future bond indentures plus 0.25x. The parties presented conflicting evidence regarding whether the 1.75x debt service coverage ratio was reasonable. The Commission's Order noted that the modified RFP removed the rebuttable presumption regarding the reasonableness of the debt service coverage in the transmission service provider's most recently issued bond covenants plus additional coverage of 0.25x. The Commission ultimately concluded that a debt service coverage ratio of 1.25x in this case was reasonable.

Denton Electric filed a petition for judicial review and as relevant to this issue, asserted that the Commission erred in relying on the amended RFP because the RFP changes (1) were not properly noticed under Commission rules and the Open Meetings Act (Tex. Gov't Code § 551.042), and (2) were erroneously applied retroactively to Denton Electric's application. Denton Electric also asserted that the record supported a debt service coverage ratio of at least 1.50x. The trial court concluded that the Commission's decision to set Denton Electric's debt service coverage ratio at 1.25x "was arbitrary and capricious and was improperly based on [an RFP] that was modified in violation of state law (the Texas Open

_____

[2] The RFP also provides that an applicant can request an additional 0.25x to the debt service coverage ratio if it shows that it had utilized short-term debt financing as an alternative to long-term debt financing in a cost-effective manner. Denton Electric did not seek an additional 0.25x under this provision.

Meetings Act) and Commission Rule, thus constituting a violation of both a statutory provision and required procedure . . . ."

Under substantial evidence review a court "shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . arbitrary or capricious," Tex. Gov't Code § 2001.174(2)(F), which is what the district court found occurred here. "Arbitrariness is a distinct ground for reversal. An agency acts arbitrarily or abuses its discretion if it fails to consider a mandatory factor, considers an irrelevant factor, considers appropriate factors but reaches a completely unreasonable result, or fails to follow its own regulations." *Save Our Springs*, 713 S.W.3d at 320.

In this Court the Commission claims that it properly modified the RFP under Commission rules as the change to it was not "significant." But the Commission also asserts that even if the RFP was improperly modified, its conclusion to set Denton Electric's debt service coverage ratio at 1.25x was not arbitrary and capricious because it was supported by substantial evidence under either RFP. Denton Electric responds that the RFP was amended in violation of Commission rules so the Commission's reliance on the modified RFP was reversible error. Denton Electric additionally asserts that the 1.25x debt service coverage ratio is not supported by substantial evidence because no party rebutted the presumption that a 0.25x adder was reasonable. We first consider whether the RFP was modified in violation of Commission rule.

### A. The Commission Failed to Follow its Required Procedure When It Made a Significant Change to the RFP.

At the time Denton Electric filed its application, the unmodified RFP provided that "[a] return based on the [transmission service provider's] debt

9

service expenses as of the end of the Historic Year, and the debt service coverage levels stated in the [transmission service provider's] most recently issued bond and debt covenants plus additional coverage of 0.25 shall be presumed reasonable." The Commission's own rule required it to publish notice in the Texas Register for any "significant change" to an RFP: "Prior to the implementation of any . . . significant change to an existing form, the change . . . shall be referenced in the 'In Addition' section of the Texas Register for public comment." 16 Tex. Admin. Code § 22.80 (amended 2026). A year after Denton Electric filed its application, the Commission amended the RFP to omit the "plus additional coverage of 0.25" portion of the equation. If this change to the RFP was "significant," then the Commission failed to provide the requisite notice required by its rule.

The Commission admits the RFP revision was a "change," but it argues that this change to the RFP was not "significant" and therefore it was not required to publish the revision in the Texas Register. Agency rules, such as the one requiring notice of a significant change, have the force and effect of a statute. *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). Courts must therefore use "the same principles we apply when construing statutes." *Tex. Comm'n on Env't Quality v. Maverick Cnty.*, 642 S.W.3d 537, 544 (Tex. 2022) (quoting *Patients Med. Ctr. v. Facility Ins. Co.*, 623 S.W.3d 336, 341 (Tex. 2021)). And, as with a statute, the "starting point is the rule's plain text." *Id.* We must interpret terms used in an agency rule based on their common meaning unless they are ambiguous or such an interpretation would lead to absurd results. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). With these principles in mind, we turn to the plain meaning of the term "significant."

"Significant" is defined in *Merriam Webster's Collegiate Dictionary* as "having or likely to have influence or effect: IMPORTANT." *Significant*,

MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2006); *see also Coplin v. Mann*, 622 S.W.3d 586, 590 n.3 (Tex. App.—Texarkana 2021, no pet.) (employing that definition). "Significant" is also defined in *Black's Law Dictionary* as "1. Embodying or bearing some meaning; having or expressing a sense. 2. Standing as a subtle sign of something; expressive of some hidden or obscure meaning. 3. Of special importance; momentous, as distinguished from insignificant." *Significant*, BLACK'S LAW DICTIONARY (12th ed. 2024).

A commissioner's comments when the Commission changed the RFP belie the contention that the change was not significant. During the meeting when the Commission decided to omit the 0.25x adder, a commissioner expressed concern over the language creating the presumption of reasonableness, noting that it could lead to "tens if not hundreds of millions of dollars of transmission that can just be presumed to be reasonable and that money disappears out of ratepayers' pockets with no explanation of where it goes."[3] These comments, recognizing that the 0.25x adder would result in tens of millions of dollars added to transmission rates, demonstrate that the revision was "significant" based on the common and legal meanings of that term. The Commission did not follow its own rule in making a significant change to the RFP that, as a commissioner explicitly recognized, would directly and substantially impact the method used to calculate a provider's rate.

The Commission additionally asserts that a "significant change" is one that only impacts the "filing requirements" and that the modifications to the RFP did

---

[3] We recognize the general proposition that "[i]t is immaterial what a commissioner may have said or thought in the process of arriving at his decision." *City of Frisco v. Tex. Water Rights Comm'n*, 579 S.W.2d 66, 72 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.). This is because "[t]he thought processes or motivations of an administrator are irrelevant in the judicial determination whether the agency order is reasonably sustained by appropriate findings and conclusions that have support in the evidence." *Id.* But here, we do not consider the commissioner's statements as evidence to support the Commission's order. Rather, we consider them to demonstrate the impact of the RFP modification on the calculation of a provider's rate.

not change any filing requirements. The Commission explains that the RFP outlines the information utilities are required to submit with a transmission rate application and also includes instructions for how the Commission processes an application. Here, the only difference under the modified RFP, the Commission claims, is the instructions for how the Commission weighs evidence. But the Commission's assertion that the change to the RFP was not significant because it did not modify the filing requirements is not supported by the language of the Commission rule requiring that significant changes be published. The rule provides that "[p]rior to the implementation of *any* . . . significant change to an existing form," the change shall be posted in the Texas Register. 16 Tex. Admin. Code § 22.80 (amended 2026) (emphasis added). The rule does not specify that only changes to the filing requirements in an existing form are considered significant or must be posted. Accordingly, we disagree that section 22.80 only requires posting a change to a form when the change is to the filing requirements. *See Maverick Cnty.*, 642 S.W.3d at 544 (explain that the starting point for interpreting an agency regulation is the plain text).

Because the Commission did not follow the required procedure for amending the RFP, the Commission's decision to set Denton Electric's debt service coverage ratio without applying the presumption in the unmodified RFP was arbitrary and capricious. *See Rodriguez*, 997 S.W.2d at 255 ("If the Commission does not follow the clear, unambiguous language of its own regulation, we reverse its action as arbitrary and capricious.").[4]

---

[4] Denton Electric also complains that the Commission's modification of the RFP also violated the notice provision of the Texas Open Meetings Act, but we need not reach that issue.

**B. The Commission's Conclusion to set Denton Electric's Debt Service Coverage Ratio at 1.25x was not Supported By Substantial Evidence.**

The Commission next asserts that regardless of which RFP was used, it would have come to the same conclusion to set Denton Electric's debt service coverage ratio at 1.25x because the presumption that the 0.25x adder was reasonable was rebutted by evidence in the record. Denton Electric counters that no party presented rebuttal evidence so the Commission was required to presume that a 0.25x adder was reasonable. A presumption is "a rule of law requiring the trier of fact to reach a particular conclusion in the absence of evidence to the contrary." *Temple Indep. Sch. Dist. v. English*, 896 S.W.2d 167, 169 (Tex. 1995). In other words, the effect of a presumption "is to shift the burden of producing evidence to the party against whom it operates." *Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1993). Accordingly, we consider whether the Commission presented evidence to rebut the presumption at issue here.

Not once in the record before the Commission did any witness mention the presumption that a 0.25x adder is reasonable or the need to rebut that presumption. That makes sense—after all, the Commission believed Denton Electric's application was subject to the revised RFP, which contained no such presumed adder. But the Commission claims that it rebutted the presumption by putting forward evidence that a debt service coverage ratio of 1.5x was unreasonable. To accept the Commission's position, we must assume the Commission countered Denton Electric's proposed rate with substantial evidence under the new RFP and, *with the same evidence*, rebutted a presumed 0.25x adder that is no longer part of the RFP. We disagree. The Commission merely provided evidence of an appropriate rate under the new RFP, not that a 0.25x adder was unreasonable.

The Commission also asserts that the record evidence supported the Commission's conclusion that a debt service coverage ratio of 1.25x was a

13

reasonable coverage ratio. But under the applicable RFP, because the reasonableness of the 0.25x adder was not rebutted, a debt service coverage ratio that did not include that adder was not supported. *See Horton v. Kansas City S. Ry. Co.*, 692 S.W.3d 112, 141 (Tex. 2024) (explaining that a presumption is a "legal rule that *requires* the court to reach a particular conclusion *absent contrary evidence*") (first emphasis added).

The Commission further claims that Denton Electric's requested coverage ratio of 1.75x based on the City of Denton's policy that Denton Electric would seek to maintain a debt service coverage of 1.50x on future bond indentures plus the 0.25x adder was unsupported because the unmodified RFP provided that an additional 0.25 of coverage is to be added a provider's "most recently issued bond and debt covenants," and not a ratio in a city policy or ordinance. But regardless of which initial debt service coverage level should have been used as a starting point—1.25x or 1.50x—the Commission failed to rebut the presumption of adding 0.25 to that level.

## C. Denton Electric's Substantial Rights Were Prejudiced by the Commission's Arbitrary Decision.

Under substantial evidence review, we reverse the Commission's order only upon a showing that the "substantial rights of the appellant have been prejudiced . . . ." Tex. Gov't Code § 2001.174(2). The Commission claims that Denton Electric's substantial rights were not prejudiced by its failure to publish the change to the RFP in the Texas Register because Denton Electric was aware of the change before it filed its amended application. But we look to whether Denton Electric's substantial rights have been violated by the action being challenged as arbitrary and capricious. *See id.* § 2001.174(2)(F) (providing that a court shall reverse and remand "if substantial rights of the appellant have been prejudiced because the administrative . . . decisions are . . . arbitrary or capricious"); *Fay-Ray Corp. v.*

14

*Tex. Alcoholic Beverage Comm'n*, 959 S.W.2d 362, 365 (Tex. App.—Austin 1998, no pet.) ("The agency order may not be reversed unless the agency record demonstrates that appellant's substantial rights have been prejudiced by the Board's committing one of the errors listed in section 2001.174(2)(A)–(F) of the APA."). Denton Electric consistently challenged the Commission's decision to limit its debt service coverage ratio to 1.25x based on the improperly amended RFP as being arbitrary and capricious. Accordingly, we look to whether the substantial rights of Denton Electric have been prejudiced by the Commission's decision to set Denton Electric's debt service coverage ratio at 1.25x in reliance on the modified RFP.

There has been no claim that Denton Electric's substantial rights were not prejudiced by the Commission's failure to apply the presumption of an additional 0.25x to its debt service recovery ratio under the unmodified RFP. Denton Electric requested $61,587,692 of debt service before any additional coverage. Multiplying this amount by a debt service coverage ratio resulted in Denton Electric's rate of return. A debt service coverage ratio that did not include the 0.25x adder reduced Denton Electric's rate of return by tens of millions of dollars, a prejudice to Denton Electric's substantial rights.

Because the Commission acted arbitrarily when it failed to apply the presumption in its unmodified RFP and Denton Electric's substantial rights were violated by that arbitrary action, we overrule the Commission's issue.

### III. The Commission's Exclusion of Denton Electric's 6% Requested Return on Investment Component of its General Fund Transfer was Authorized and Supported by Substantial Evidence.

In its first issue on cross appeal, Denton Electric asserts that the Commission unlawfully denied inclusion of Denton Electric's requested return on investment component of its general fund transfer. In Denton Electric's Application, it sought

15

to include a general fund transfer in its transmission cost of service rates. That amount totaled 11% of its revenues made up of a 5% franchise fee component and a 6% return on investment component. In its final order, the Commission found that Denton Electric had established the reasonableness of the 5% franchise fee, but it failed to sufficiently substantiate the 6% return on investment component for inclusion in its transmission rates. Denton Electric claims that the Commission has unlawfully denied inclusion of a material component of its general fund transfer, causing Denton Electric to charge a rate that does not recover all its required expenses. The Commission responds that Denton Electric may only recover expenses through its transmission rates that are reasonable and necessary for providing transmission service, and the 6% return on investment component is not a reasonable and necessary cost. We agree with the Commission and conclude that the Commission had authority to exclude the 6% return on investment component and that its decision to exclude it is supported by substantial evidence.

### A. The Commission had Authority to Exclude Denton Electric's General Fund Transfer.

The Commission calculates a utility's transmission rates using all reasonable and necessary expenses, plus a reasonable return on investments. *City Pub. Serv. Bd.*, 109 S.W.3d at 132. Denton Electric argues that the Commission "robbed" Denton Electric of its right to earn a reasonable rate of return. But Denton Electric does not explain how it was entitled to an additional category of a return on investment above its debt service coverage. And in its application, Denton Electric requested the 11% general fund transfer as a tax other than income tax. *See* 16 Tex. Admin. Code § 25.192(c) (providing that federal income taxes are considered an expense when calculating the transmission cost of service). Accordingly, we review the Commission's decision to exclude the 6% return on investment component of the general fund transfer as a decision to disallow an expense and

16

not as a component of a return on investment.

To establish just and reasonable rates, the Commission must consider a utility's "reasonable and prudent operating expenses." *Pub. Util. Comm'n of Tex. v. Hous. Lighting & Power Co.*, 748 S.W.2d 439, 441 (Tex. 1987). PURA explicitly provides that the Commission "shall ensure" that a utility providing wholesale transmission service "recovers the utility's reasonable costs . . . ." Tex. Util. Code § 35.004(c). But not all a utility's expenses are considered reasonable for ratemaking purposes. *Hous. Lighting & Power*, 748 S.W.2d at 441. Accordingly, the Commission possesses "the discretionary authority to disallow those operating expenses which are not prudently or actually incurred by a utility." *Id.*; *Suburban Util. Corp. v. Pub. Util. Comm'n of Tex.*, 652 S.W.2d 358, 362 (Tex. 1983) ("The [Commission's] ratemaking power includes the discretion to disallow improper expenses.").

Despite the Commission's authority to consider the reasonableness of a utility's expenses, Denton Electric first claims that the Commission has no authority to exclude general fund transfers as they are permitted by statute. Under the Government Code, a municipally owned utility may transfer funds from the utility to the general fund of the municipality:

> [A] municipality and its officers and utility trustees may transfer to the municipality's general fund and may use for general or special purposes revenue of any municipally owned utility system in the amount and to the extent authorized in the indenture, deed of trust, or ordinance providing for and securing payment of public securities issued under this chapter or similar law.

Tex. Gov't Code § 1502.059. Denton Electric claims that under this statute the Commission may not disallow a general fund transfer because such a decision invalidates the exact scenario authorized by the statute by "overrul[ing] and effectively nullify[ing] the authority granted to the City . . . ." We disagree with

17

Denton Electric's interpretation of section 1502.059.

Looking to the language of section 1502.059, it permits general fund transfers but says nothing about whether those general fund transfers are recoverable expenses. It is also silent regarding the Commission's discretion to determine whether as expenses they are reasonable and are therefore recoverable. *See Hous. Lighting & Power*, 748 S.W.2d at 441. Further, under Denton Electric's construction, a municipally owned utility could charge its ratepayers *any* amount to then be transferred to the municipality without any oversight. *See City of Fort Worth v. Rylie*, 602 S.W.3d 459, 467 (Tex. 2020) ("We will not construe a statute's language to produce 'patently nonsensical results' . . . ." (quoting *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013))). Accordingly, we reject Denton Electric's claim that the Commission's decision to exclude certain general fund transfers is prohibited by section 5102.059. *See Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017) (explaining that when reading a statute, "we take statutes as we find them and refrain from rewriting the Legislature's text.").

Denton Electric claims that because it is mandated to make a general fund transfer totaling 11% through city charter, an ordinance, and a financial memo, the general fund transfer should be included in Denton Electric's wholesale transmission rates under Utility Code section 35.004 which requires the Commission to ensure a utility recovers its reasonable costs. But Texas Government Code section 1502.057 sets out expenses that must be included in a municipally owned utility's rates, and it does not *require* that general fund transfers be included (whether required by ordinance or otherwise). Tex. Gov't Code § 1502.057(a)(1) (providing that rates shall include "all operating, maintenance, depreciation, replacement, improvement, and interest charges in

18

connection with the utility system"). Further, Denton Electric's claim that the general fund transfer must be included because it is required by the City ignores the statutory language requiring the Commission to ensure that a utility recovers its "*reasonable* costs," and the Commission's discretion to determine what costs are reasonable. Tex. Util. Code. § 35.004(c) (emphasis added); *Hous. Lighting & Power*, 748 S.W.2d at 441.

Denton Electric next claims that the Commission's exclusion of the 6% return on investment was arbitrary and capricious because it was not based on any legal authority. Denton Electric claims that "the Commission insists on creating and applying—for the first time ever, without reference to any existing authority—a standard that a transfer must be 'directly tied' to the costs of providing transmission service." Denton Electric focuses much of its argument on this claimed requirement that a transfer be "directly tied," claiming that this "unfounded standard" arose from a commissioner's statement in an unrelated rate hearing that the municipally owned utility "should only be allowed to recover [general fund transfer] costs that can be 'justified by a specific rationale' related to the 'actual cost' of the provision of service." But the Commission's Order does not use the phrase "directly tied." Nor does the Commission argue in this Court that its order was proper because the transfer was not directly tied to the costs of providing a transmission service. To the contrary, in its findings of fact regarding the general fund transfers in the Commission's Order, the Commission stated that "[r]equiring a utility to substantiate all its transfers to the general fund that are included in transmission rates falls within the Commission's discretion to ascertain the *reasonableness* of such costs." The Commission also found that "[t]he City provided no explanation or justification for *reasonableness* of the increased 6% [return on investment] rate  . . . ."

Denton Electric points to the testimony of a Commission staff witness who testified regarding Denton Electric's general fund transfer as support for its claim that the new standard was the basis for the Commission's decision. The staff witness pointed to the commissioner's statement referenced above, noting the "concern that the municipal utility . . . should only be allowed to recover [general fund transfers] that can be justified by a specific rationale related to the actual cost of the provision of service and not just [general fund transfers] as additional compensation." But the witness also testified that in addition to this concern, Denton Electric "has not provided support for the *reasonableness* of an additional return amount that is over and above the return dollars provided to" Denton Electric using the debt service coverage method. We disagree with Denton Electric's characterization that the Commission created and applied a new standard when it excluded Denton Electric's 6% return on investment component.[5] *Hous. Lighting & Power*, 748 S.W.2d at 441 (requiring the Commission to consider a utility's "reasonable and prudent" operating expenses).

Denton Electric also argues that by prohibiting it from recovering a rate of return in its cost of service, "the Commission is denying the City its established right to earn a reasonable profit for its ownership of Denton Electric." Relying on *San Antonio Independent School District v. City of San Antonio*, Denton Electric asserts that a municipality may receive a profit from its ownership of a utility. 550 S.W.2d 262, 264 (Tex. 1976) ("The general rule is that the city is entitled to make

---

[5] As support for its claim that the Commission created and applied the "directly tied" standard, the City points to the Commission's statement in its brief in the district court that "[u]nder the Commission's rules and authorizing statute, the Commission is required to review Denton's requested inclusions to determine whether they are directly tied to the actual cost of providing transmission service and whether they are reasonable." But the Commission went on to argue, consistent with its argument in this Court and the conclusions in the Commission Order, that Denton Electric "did not sufficiently substantiate the reasonableness of including the [return on investment] component of its Fund Transfer in its transmission rates."

20

a reasonable profit from its own utility system.") We agree with the general proposition that the City may make a profit from its ownership of Denton Electric. The Commission has set out the methods that a municipal utility may use for determination of its revenue requirements: cash flow, debt service coverage ratio, times interest earned ratio, and rate of return. Denton Electric based its requested return on a debt service coverage method (discussed above) but fails to explain how it is entitled to recover additional profit not covered by that method.

We further recognize that while the Court in *City of San Antonio* permitted the fund transfer in that case, the Court expressly noted that the *reasonableness* of the rates were not at issue. *Id.* at 265. "Upon proper pleading and record, if the City's return were proved to be excessive and unreasonable, the courts could grant relief." *Id.* The Court's recognition that a city's rate of return must be *reasonable* is consistent with Texas Utility Code section 35.004(c) (enacted after the Court's decision) which authorizes the Commission to review the reasonableness of rates.

Finally, Denton Electric points to prior cases in which it claims the Commission granted inclusion of "comparable or higher" general fund transfers without inquiring into whether the requested percentage was "directly tied" to transmission costs. The Commission responds that in the cited cases, utilities were permitted to recover "fund transfers that resulted from settlement agreements or were otherwise uncontested. In those prior settlement agreements, the Commission has approved, excluded, or not addressed fund transfers at all." But regardless of what the Commission did in other unrelated cases, that does not impact the Commission's authority to act here. The Commission was authorized under PURA to address the reasonableness of the general fund transfer.

21

**B. Substantial Evidence Supports the Commission's Decision to exclude the 6% Return on Investment Component.**

Turning to whether the Commission's decision that Denton Electric's 6% return on investment component was not a reasonable and necessary cost, we look to the evidence to determine whether the evidence as a whole is such that reasonable minds could have reached the same conclusion. *See Suburban Util. Corp.*, 652 S.W.2d at 364. We further note that "[i]f the expense can be shown to be actual, necessary and reasonable it should be allowed." *Id.* at 363.

Denton Electric claims that the 6% return on investment component was supported by testimony that if an investor-owned utility were to serve the City, it would pay the City more than only franchise fees. According to Denton Electric, this demonstrates that the 6% return on investment component provides cost recovery to the City of revenue that Denton Electric would otherwise have to pay if it were not municipally owned. Denton Electric points to testimony from Commission staff that a non-municipal utility would pay ad valorem taxes if it owned property within the City. She agreed with the statement that "if a utility is operating within a city and it pays some sort of taxes or fees beyond the franchise fees that the city would actually receive more than just the five percent franchise fee from that utility," answering, "[t]hat's correct." And a witness for the Office of Public Utility Counsel testified that the City would receive more than a 5% franchise fee from a non-municipal utility if that utility "paid five percent franchise plus other taxes." The ALJ rejected this testimony as evidence of reasonableness of the 6% return on investment, noting that Denton Electric provided no information related to the amount of ad valorem or other taxes paid by other utilities that would support a claim that the 6% component was comparable to those other utilities'

expenses.[6]

Denton Electric also claims that the return on investment component is akin to dividends an investor-owned utility pays to its shareholders. But this analogy was rejected by the Commission. A witness for the Office of Public Utility Counsel testified to the contrary, explaining that an investor-owned utility would receive all of its earnings (which would be used to pay dividends) through its authorized return. Here, Denton Electric elected to use the debt service coverage method to calculate its rate of return. *See* 16 Tex. Admin. Code § 25.192(c)(1), (2) (providing multiple methods for a municipally owned utility to calculate its rate of return). Denton Electric's requested return on investment component is additional requested compensation above the debt service coverage return that is already included in Denton Electric's rates and is accordingly not analogous to a dividend payment.

Denton Electric also argues that the records supports a minimum return on investment component of 3.5%. Denton Electric points to evidence that the City requires its water and wastewater utilities to pay a 3.5% return on investment general fund transfer. The record also showed that a 3.5% return on investment general fund transfer was allowed in Denton Electric's prior transmission cost of service rates.[7] But Denton Electric fails to point to any evidence or argument before the Commission that a 3.5% rate was *reasonable*. Based on all the evidence, we conclude that the Commission's decision that Denton Electric had not

---

[6] In contrast, the Commission approved the 5% franchise fee component of the general fund transfer, concluding Denton Electric had established it was reasonable. Denton Electric presented evidence that the 5% fee was consistent with the franchise rates charged to other utilities operating in the City.

[7] In 2020, the City Council passed an ordinance raising the return on investment portion of Denton Electric's general fund transfer from 3.5% to 6% in response to the impacts from COVID-19. The increase was intended to be temporary, but a subsequent ordinance made the change permanent.

established the reasonableness of its 6% return on investment fee was supported by substantial evidence. That is, reasonable minds could have reached the same conclusion as the Commission.

Finally, Denton Electric also challenges the Commission's decision on the ground that it was meant to "punish" Denton Electric for its purported "overearning" in prior years. But this is not consistent with the Commission's Order. The Order does not reflect that the 6% return on investment GFT was not allowed based on Denton Electric's prior "overearning." Rather, the order explained that Denton Electric failed to justify the requested GFT, and as discussed above, this conclusion is supported by substantial evidence. Additionally, even if the Commission had stated in its order that it was punishing Denton Electric, "a reviewing court is not bound by the reasons given by an agency in its order, provided there is a valid basis for the action taken by the agency," which we have concluded there was. *Cent. Power & Light Co./Cities of Alice v. Pub. Util. Comm'n of Tex.*, 36 S.W.3d 547, 559 (Tex. App.—Austin 2000, pet. denied). We overrule Denton Electric's first issue.

## IV. Denton Electric's Challenge to the Commission's Order Requiring it to File an Interim Transmission Cost of Service Application is Moot.

The Commission Order required Denton Electric to file an interim transmission cost of service proceeding within 90 days after the order was filed. Denton Electric claims that this order has no basis in law and its rights have been prejudiced by being subjected to a proceeding that was impermissibly ordered. In response, the Commission asserts that the issue is moot because Denton Electric has already complied with the order by filing an application for an interim update of its wholesale transmission rates. We agree with the Commission that this issue is moot.

A court cannot decide a case that has become moot, meaning there is no longer "a justiciable controversy between the parties—that is, if the issues presented are no longer 'live,' or if the parties lack a legally cognizable interest in the outcome." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012) (quoting *Williams v. Lara*, 52, S.W.3d 171, 184 (Tex. 2001)). "Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Id.* Denton Electric asserts that the order requiring it to file an interim rate proceeding should be reversed, but Denton Electric already filed the application, and the Commission has already issued a Notice of Approval addressing it. Accordingly, there is no action by this Court that would affect Denton Electric's rights or interests regarding the requirement that it file an interim proceeding.

Denton Electric claims that review of the Commission's Order is still appropriate because the capable-of-repetition-yet-evading-review exception to mootness applies here. This exception "applies only in rare circumstances" and applies when a plaintiff proves "(1) the challenged action was too short in duration to be litigated fully before the action ceased or expired; and (2) a reasonable expectation exists that *the same complaining party* will be subjected to the same action again." *Tex. Dep't of Fam. & Protective Servs. v. Grassroots Leadership, Inc.*, 717 S.W.3d 854, 884 (Tex. 2025) (quoting *Williams*, 52 S.W.3d at 184).

Denton Electric argues that "it is reasonable to expect that [Denton Energy] in particular (along with all other [municipally owned utilities] with transmission systems, for that matter) will experience the same wrongful conduct by the Commission." It simply claims that Denton Energy will continue to file rate cases "and if those proceedings take any material length of time, the Commission is likely to repeat its pattern of ordering an immediate interim rate filing (as it has

boldly claimed it has every right to do)." But Denton Electric has not pointed to evidence of a "pattern" of Commission actions, nor has it otherwise supported its claim that the Commission is "likely" to order an interim filing in the future. As for whether a reasonable expectation of the same action exists, "a 'mere physical or theoretical possibility' is insufficient to invoke the capable-of-repetition exception." *Id.* at 885 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam)). Denton Electric has failed to demonstrate more than a mere theoretical possibility that it will be required to file an interim transmission cost of service application in the future.

Additionally, Denton Electric's claim that it is reasonable to expect that other municipally owned utilities will experience the Commission's wrongful conduct is unavailing. Denton Electric must prove that it, and not another party, will be subjected to the same action in order to show that the exception applies. *See Tex. Dep't of Fam. & Protective Servs.*, 717 S.W.3d at 884; *Williams*, 52 S.W.3d at 184-85 (holding that the exception did not apply where former inmates failed to prove they would be subjected in the future to the jail program they were challenging when they had already been released from jail). Whether other municipally owned utilities might be required to file such an application is immaterial to whether Denton Electric will be subjected to the same action.

Because this issue is moot, we have no jurisdiction to render the judgment Denton Electric seeks.

## CONCLUSION

Having overruled the Commission's issue and the City of Denton's issues, we affirm the judgment of the district court reversing and remanding the Commission's decision to set Denton Electric's debt service coverage ratio at 1.25x and upholding the remainder of the Commission's order.

/s/ April Farris
April Farris
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.